In re Leroy H. KEHM and Christine E. Kehm, Debtors.

Leroy H. KEHM and Christine E. Kehm, Plaintiffs,

v.

CITICORP HOMEOWNERS SERVICE, INC., Public Finance Consumer Discount Co., Frederick L. Reigle, Trustee, Defendants.

Bankruptcy No. 85–01521T.
Adv. No. 85–0612.

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 30, 1988.

Judith Jones, Lehigh Valley Legal Services, Allentown, Pa., for debtor.

Gary E. McCafferty, Philadelphia, Pa., for Citicorp Homeowners Service, Inc.

Public Finance Consumer Discount Co., Whitehall, Pa., for Public Finance Consumer Discount Co.

Frederick L. Reigle, Reading, Pa., Trustee.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Four interrelated matters are presently before this court on motions and a complaint involving debtors Leroy H. and Christine E. Kehm ("debtors") and creditor Citicorp Homeowners Service ("Citicorp")[1]:

(1) Debtors' 11 U.S.C. § 506(a) complaint to determine the extent of Citicorp's secured status in property utilized as debtors' principal residence ("property");

(2) Citicorp's 11 U.S.C. § 362 motion seeking relief from the automatic stay;

(3) Debtors' motion for a moratorium on payments;

(4) The confirmation of debtors' amended plan ("plan"). We hold[2] that the application of § 506(a) to these facts does not work an impermissible 11 U.S.C. § 1322(b) modification; that Citicorp may obtain re-

---

1. On August 28, 1985, we entered a default judgment against Public Finance Consumer Discount Co., the second mortgagor-defendant. The third defendant, the trustee, has submitted a brief letter memorandum outlining his position.

2. This opinion constitutes the findings of fact and conclusion of law required by N.B.R. 7052 and Rule 52 of the Federal Rules of Civil Proce-

---

lief from stay; that no moratorium will be granted, and that these holdings moot the confirmation of debtors' amended plan.

We agree with debtors' basic premise that the determination of Citicorp's secured status is pivotal to the resolution of the three other matters but we disagree with the order in which they analyze these matters. Debtors focus first on the § 506 complaint, suggesting that Citicorp's claim may be unsecured in an amount in excess of the value of the property. They then look to their plan, stating that the feasibility of the plan may turn on the amount of that unsecured excess. The existence of a feasible plan, according to the debtors, may constitute the adequate protection needed to defeat Citicorp's § 362 motion. While not denying these interrelationships, we find two problems with debtors' approach. First, debtors' approach assumes that identical methods of valuation will be applied on all of these issues, an assumption that is not necessarily correct. See e.g., Provident Bank v. BBT (In re BBT), 11 B.R. 224, 229 n. 10, 7 B.C.D. 769 (Bankr.D.Nev. 1981); 3 Collier On Bankruptcy § 506.04, p. 506–25 (1988). Second, since a decision granting § 362 relief might be dispositive of the other issues, we feel that approaching the § 362 motion first would be the most concise mode of analysis. However, in the interest of fully analyzing debtors' position, we will utilize their approach, with appropriate modifications for valuation.

## I VALUATION UNDER § 1322 AND § 506

The valuation issue centers on the question of whether the application of § 506(a) to determine the secured status of an undersecured first mortgage creates the type of modification prohibited by § 1322(b). The positions of debtors and Citicorp are

---

dures. We note that there may be some dispute within this district regarding the proper procedure to raise § 506 issues. Compare In re Jablonski, 70 B.R. 381, 385 (Bankr.E.D.Pa.1987) (must use adversary proceedings); Windfelder v. Rosen (In re Windfelder), 82 B.R. 367, 370 (Bankr.E.D.Pa.1988) (must be presented by motion as contested matters).

diametrically opposed, and represent the split in authority on this question.

Section 506(a) of the Code provides for the bifurcation of claims into secured and unsecured portions:

§ 506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the *value of such creditor's interest* in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (emphasis added). After a claim is bifurcated, the parties can turn to subsection (d) which describes the circumstances under which that excess portion of the lien is treated:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

■ It is this § 506 bifurcation process which Citicorp finds violative of § 1322(b). Under § 1322(b), a "plan may:"

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or

leave unaffected the rights of any class of claims;

* * * * * *

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b)(2) and (b)(5). In a nutshell, Citicorp interprets § 1322(b)(2) to mean that *no* modification of Citicorp's rights can occur without violating § 1322. Specifically, Citicorp claims that the mere act of making a § 506 division of secured and unsecured portions of a claim modifies its rights in contravention of § 1322. We reject this simplistic argument.

The parties focus on two early decisions from this district, neither of which addresses the "interplay" between § 506 and § 1322. *See Nefferdorf v. First Nat'l Mortgage Assn. (In re Nefferdorf),* 26 B.R. 962, 10 B.C.D. 150 (Bankr.E.D.Pa.1983), *aff'd* 71 B.R. 217 (E.D.Pa.1984); *Everett v. Kirk Mortgage Co. (In re Everett),* 48 B.R. 618 (Bankr.E.D.Pa.1985). In *Nefferdorf,* the court refused to avoid a portion of a lien pursuant to § 506(d), holding that a prerequisite to such avoidance was the existence of one or more of the factors listed in § 502. In *Everett,* the court distinguished portions of the *Nefferdorf* decision, noting that the 1984 amendments clarify that no independent § 502 action must be filed. Two conflicting lines of cases reflecting the interplay of § 506 and § 1322 have sprung from the stage set by *Nefferdorf* and *Everett.*

Citicorp embraces the argument emphasized by those courts which find a conflict between § 502, § 506 and § 1322. These courts conclude that the more specific nonmodification language of § 1322 must override the general provisions of § 502 and § 506. *See e.g., In re Simpkins,* 16 B.R. 956, 965, 6 C.B.C.2d 1081, Bankr.L.Dec. ¶ 68,587 (Bankr.E.D.Tenn.1982) (interpreting § 506(b) and § 1322(b)(2)); *In re Smith,* 63 B.R. 15, 17 (Bankr.D.N.J.1986);

*In re Hynson,* 66 B.R. 246, 249, 15 C.B.C. 2d 1323, Bankr.L.Dec. ¶ 71,502 (Bankr.D.N. J.1986). The crux of the conflict posited by these courts is unclear; they do not indicate why it is necessary to look beyond the plain meaning of § 1322.

A second group of cases supports our conclusion that the plain meaning of these sections is that a § 506 determination does not create an impermissible § 1322 modification. Section 1322 prohibits a *plan* from creating certain modifications. 11 U.S.C. § 1322(b). It does not prohibit modifications occurring as a result of procedures or vehicles other than the plan. There is no ambiguity in the language of this section. *Accord, In re Jablonski,* 70 B.R. 381, 386 (Bankr.E.D.Pa.1987). Some courts have even suggested that § 1322 applies only to fully secured claims. Section 1322(b)(2) clearly distinguishes between (1) holders of secured claims, whose rights may modified; (2) holders of claims secured by a debtor's principal residence, whose rights may not be modified, and (3) holders of unsecured claims, whose rights may not be modified. The only logical, semantic interpretation of this section is that the § 1322(b)(2) prohibition against modification is limited to fully secured claims.[3] *Accord In re Simmons,* 78 B.R. 300–304, 17 C.B.C.2d 710, 16 B.C.D. 708, Bankr.L.Dec. ¶ 71,998 (Bankr.D.Kan. 1987); *Spadel v. Household Consumer Discount Co. (In re Spadel ),* 28 B.R. 537, 540, 10 B.C.D. 506, Bankr.L.Rep. ¶ 69,121 (Bankr.E.D.Pa.1983).

A functional interpretation of § 506 underscores our conclusions regarding the plain meaning of § 1322. Section 506 provides the process by which we determine whether a claim is, in fact, secured. Referring to § 1322 and § 506, one leading commentator noted:

And, since this section only applies to modification of the rights of holders of claims by the chapter 13 plan, it does not affect the *determination* of the allowed secured claim through the operation of section 506.

5 *Collier on Bankruptcy* § 1322.06[1], p. 1322–14—1322–15 (1988) (emphasis added). Or, as our District Court noted:

Whether a plan impermissibly modifies the rights of the holder of a claim secured only by a mortgage on a debtor's principal residence must necessarily follow the *determination* of how much of its claim is, in fact, secured. The context in which these issues usually arise, viz., where a Chapter 13 debtor's plan is already known, has the unfortunate effect of obscuring the separateness of § 506(a) and § 1322(b)(2).

*In re Jablonski,* 88 B.R. 652 (E.D.Pa.1988) (emphasis added). *Accord, Mays v. United States of America (In re Mays ),* (E.D.Pa. 1988) (dicta) [available, on WESTLAW, 1988 WL 81716].

We also find indirect support for our analysis of the plain meaning of § 1322 in a recent Third Circuit opinion. *In re Roach,* 824 F.2d 1370 (3d Cir.1987). In an effort to determine whether a post-acceleration cure modified a mortgagee's rights in a manner rendered impermissible by § 1322(b)(2), the Third Circuit stated:

... a post-acceleration cure differs from other kinds of modification to a home mortgagee's rights in that it does no more than return the debtor to full compliance with the mortgage and restore the original mortgagee-mortgagor relationship. *There is good reason to believe that Congress was contemplating more substantial alterations of rights when it excepted home mortgagees' rights from § 1322(b)(2)'s general authorization to 'modify the rights of holders of secured claims.'*

First, Congress placed the authorization to 'modify the rights of holders' of various claims in § 1322(b)(2), separate from the authorization to cure defaults found in § 1322(b)(3) and the authorization to cure defaults and maintain payments on long-term debt obligations

---

**3.** The parties do not raise the interesting question of whether Citicorp can possess a § 1322 "security interest," which is a "lien created by an agreement," 11 U.S.C. § 101(45), when it appears that Citicorp holds a nonconsensual foreclosure judgment. *See generally In re McKeon,* 86 B.R. 350 (Bankr.D.N.J.1988). We cannot independently assess this question because of a lack of evidence.

found in § 1322(b)(5), thus suggesting that Congress drew a distinction between modifications and cures.

*Id.* at 1375. The authorization to initiate a § 506 valuation hearing is also separate from the § 1322(b) prohibition against modification. We suspect that the Third Circuit would not find that the act of rendering a § 506 determination creates a § 1322(b)(2) modification. They have already ruled that a post-acceleration cure, a step with a much more drastic and immediate impact on a mortgagee's rights, is not prohibited by § 1322(b).

The fact that this § 506(a) complaint was heard on the same date as the objections to confirmation does not change our position. The action of which Citicorp complains is not the plan; it is the § 506(a) process which is the pre-requisite to the presentation of an effective plan.

We can now apply § 506 to the facts of this case. Citicorp's interest must be measured in terms of the estate's interest. Although the chapter 13 statement indicates that the property value is $32,000, at this hearing,[4] nearly nine (9) months later, debtor-husband testified that the market value was only $25,000. N.T., p. 8. Citicorp presented no appraisal for the property.[5] We are convinced by debtor's testimony that the value of the home decreased subsequent to the purchase as a result of unrepaired deterioration, although we question his ability to provide a completely accurate appraisal. On limited evidence, considering the nature and extent of repairs currently necessary, we find the fair market value of the home to be $28,000. Under § 506(a), Citicorp's lien is secured only to this extent.[6] Because of our decision to grant relief from the automatic stay, this figure lacks independent significance and we will apply it only to set a perimeter for § 362 valuation purposes.

## II  RELIEF UNDER § 362

██  It is unclear whether Citicorp is proceeding under § 362(d)(2) or § 362(d)(1). As a threshold issue, we reject debtors' contention that the terms of § 362(d)(2) do not apply in chapter 13 cases. Although courts have split on this issue, courts from our district have consistently allowed application of § 362(d)(2) in the chapter 13 setting. *See e.g., In re McAloon,* 1 B.R. 766, 1 C.B.C.2d 306, 5 B.C.D. 1207, Bankr.L. Rep. ¶ 67,317 (Bankr.E.D.Pa.1980); *Jay's Vending Inc. v. McGowan, (In re McGowan),* 6 B.R. 241, 6 B.C.D. 1001 (Bankr.E.D. Pa.1980); *Colonial Mortgage Service v. Dallasta (In re Dallasta),* 7 B.R. 883 (Bankr.E.D.Pa.1980); *In re Schwartz,* 9 B.R. 445, 447 (Bankr.E.D.Pa.1981); *Beneficial Mutual Savings Bank v. Roselli (In re Roselli),* 10 B.R. 665, 667 (Bankr.E.D. Pa.1981); *FNMA v. Henderson (In re Henderson),* 21 B.R. 285, 286 n. 7 (Bankr.

---

4. We have chosen the date of the confirmation hearing as the date on which valuation is determined since the debtors' goal in establishing valuation figures is the preservation and confirmation of a chapter 13 plan. *Blakey v. Pierce (In re Blakey),* 76 B.R. 465 (Bankr.E.D.Pa.1987), *mod. in pt.* (other grounds), 78 B.R. 435 (Bankr. E.D.Pa.1987). *Blakey* involved a § 506(a) action.

5. The statement in Citicorp's memoranda that the property is worth "$32,000 or more" has no evidentiary value. *See* discussion, *infra,* pp. 123–24, n. 9.

6. Because of our holding that § 506(a) does not work an impermissible § 1322(b) modification, we need not decide a very interesting question not raised by these parties. The mortgage in this case covers "... rents, issues and profits ..." as well as certain "... appliances, which are, and shall be deemed to be, fixtures and a part of the realty ..." This language may remove Citicorp from the category of creditors secured "only" by the debtors' principle residence. *See e.g., Bender v. Commonwealth Mortgage Co. (In re Bender)* 86 B.R. 809 (E.D.Pa. 1988); *In re Ford,* 84 B.R. 40, 42 (Bankr.E.D.Pa. 1988) (strongly suggesting that a mortgage which covers fixture-type items "notwithstanding any of such are capable of severance without harm to the real estate," would not fall within § 1322(b)(2), but court did not decide issue because of other available grounds for decision); *In re Caster,* 77 B.R. 8, 11, 16 B.C.D. 680 (Bankr.E.D.Pa.1987); *In re Crompton,* 73 B.R. 800, 805–06 (Bankr.E.D.Pa.1987) (court noted that security interest was taken "whether or not" the appliances were deemed fixtures); *In re Jablonski,* 70 B.R. 381, 386 (Bankr.E.D.Pa. 1987) (including appliances which might not otherwise have been considered fixtures, by the judge); *In re Johnson–Allen,* 67 B.R. 968 (Bankr. E.D.Pa.1986) (mortgage included certain items "whether fixtures or not").

E.D.Pa.1982); *In re Klutzaritz*, 46 B.R. 368 (Bankr.E.D.Pa.1985) (applying § 362(d)(2) without further discussion); *In re Crompton*, 73 B.R. 800, 811–12 (Bankr. E.D.Pa.1987); *but cf. Citizens Southern Nat'l Bank v. Feimster* (*In re Feimster*), 3 B.R. 11, 1 C.B.C.2d 956, 6 B.C.D. 131 (N.D.Ga.1979); *Roosevelt Savings Bank v. Branch* (*In re Branch*), 10 B.R. 227, 4 C.B.C.2d 105, 7 B.C.D. 540, Bankr.L.Dec. ¶ 67,966 (Bankr.E.D.N.Y.1981); *In re Garner*, 13 B.R. 799, 4 C.B.C.2d 1417, Bankr.L. Dec. ¶ 68,292 (Bankr.S.D.N.Y.1981).

Section 362(d)(2) provides that the court shall grant relief if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). It is clear that debtor has no equity in this property.[7] The Code provides neither the method of valuation to be applied in a § 362 hearing, *see e.g., In re Morysville Body Works, Inc.*, 86 B.R. 51, n. 4 (Bankr.E.D.Pa.1988), nor the appropriate date at which this value is to be determined. *See generally, In re Haiflich*, 63 B.R. 314, 316, 15 C.B.C.2d 640, 14 B.C.D. 1195, Bankr.L.Dec. ¶ 71,414 (Bankr.N.D. Ind.1986) (evaluating application of three distinct valuation dates). All of this is superfluous, however, since the parties agree that the debtor lacks equity. Since Citicorp put forth no valuation figures, we return to the schedules which suggest that the value as of the filing date was $32,000, which subsequently decreased to $28,000 as of the hearing date. Citicorp holds a $38,-833.99 mortgage foreclosure judgment. Irregardless of the date for or method of valuation we choose, we can fashion no scenario under which debtors hold equity.

Since debtors lack equity, we turn to § 362(d)(2)(B). Inconsistent opinions exist within our district on the question of whether the non-availability of comparable housing makes this type of residential property necessary for an effective chapter 13 reorganization. *See e.g., Commonwealth State Employers Retirement Fund v. Gardner* (*In re Gardner*), 14 B.R. 455, 456 (Bankr.E.D.Pa.1981) ("The availability of cheaper housing precludes this property from being necessary for chapter 13 reorganization"); *Haines v. GMAC* (*In re Haines*), 10 B.R. 856, 860 (Bankr.E.D.Pa. 1981) (hardship to the debtor is no reason to deny § 362 relief where the creditor has otherwise established that relief is warranted); *In re Dallasta*, 7 B.R. 883, 885 (Bankr. E.D.Pa.1980) (in spite of attempts to show unavailability of comparable housing, court found that property was not necessary to an effective reorganization). *See also In re Crompton*, 73 B.R. 800, 811–12 (court suggests that the fact that the debtor can get comparable housing should not be determined under § 362(d)(2)(B) because the potential for future homeownership and its attendant benefits "... are significant human values ... that a bankruptcy court should be loath to second-guess a debtor ...").

A broader and more appropriate statement of the law regarding homes as "necessary" property lies somewhere between the positions represented by *Gardner* and *Crompton*. These conflicting cases draw their conclusions not from significant statutory language or historical precedent, but rather from concepts of the unique role of Chapter 13 relief. Our view is less rigid. "Chapter 13 is designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor." Notes of Committee on the Judiciary, Sen. Rep. No. 95–989, *reprinted in Bankruptcy Code, Rules and Forms*, p. 404 (West's 1987 Rev.Ed.). That flexibility is reflected in innumerable Code sections. *See e.g.,* § 1307 (broad power to convert or have case dismissed); § 1322(b)(3) (proposed plan may provide for curing or waiving of default); § 1322(b)(5) (even the homeowner without equity is given a chance to cure

---

7. The dual nature of this § 362 motion and § 506 complaint creates a double bind for Citicorp. On one hand, Citicorp pushes for a high valuation figure on the § 506 complaint, hoping to decrease the portion of the lien deemed unsecured. On the other hand, Citicorp must prove that debtor lacks equity in the property to prevail under § 362. This would entail prompting the lowest possible valuation figure. Under the circumstances, we are not surprised that Citicorp offered no appraisal.

defaults). Because of the many options available to a debtor, the treatment of property cannot be consistent in each case; too many variables exist. Thus, it is unrealistic to state that the debtor's principle residence will or will not meet the § 362(d)(2)(B) "necessary" test in all cases. We think that the appropriate approach to these cases is one which we have employed in a previous decision and which eschews a rigid per se rule in favor of a close examination of debtor's testimony.[8] Thus, where debtors did not even allege that the property was necessary to an effective reorganization, we granted relief. *In re Klutzaritz*, 46 B.R. 368, 370. In another case, the debtor testified that the only reason he filed bankruptcy was to save his home, but he did not meet his burden of proof because he offered "no evidence that keeping his home was essential to his plan either because adequate housing was unavailable or because his home was used in his job." *In re Roselli*, 10 B.R. 665, 667. We granted relief in *Roselli*. A close examination of debtor's motive testimony is critical because it gets to the heart of the term "necessary," a term that must be interpreted in light of the unique circumstances of each case.

■ In the instant case, debtors attempt to fulfill their § 362(g) burden by arguing that their inability to obtain alternative housing constitutes a reason for denying § 362 relief. Husband-debtor testified that his monthly mortgage payment is $429, N.T., p. 15, and that he is paying a monthly fee of $50 to the trustee. N.T., p. 13. He needs housing for his wife and seven (7) children, and testified that he found a few homes that ran "like $475, $525, $550 a month, which is out of my reach." N.T., p. 15. He also testified that he needed to keep the house to reorganize his affairs. N.T., p. 15. By our calculations, the monthly payments of $429 for the mortgage and $50 for the trustee total $479, which would mean that a home renting for $475 *was* within his reach. This is particularly true since debtor-husband testified that debtor-wife has now obtained employment outside of the home. N.T., p. 11. Under these circumstances, the home is not "necessary," and we would be inclined to grant relief under § 362(d)(2). We need not rest our decision solely on § 362(d)(2), however, because we reach the same conclusion under § 362(d)(1).

Citicorp advances one argument, in support of its request for § 362(d)(1) relief: that non-payment of 11 post-petition mortgage payments constitutes "cause" for relief. Although there is case law to support this general proposition, *see e.g.*, *In re Frascatore*, 33 B.R. 687, 688 (Bankr.E.D. Pa.1983) (cited by Citicorp), it must be considered in context. A showing of a failure to make payments simply means that movant has met its initial burden of production. The debtor then has the ultimate burden of proving that movant's interests are adequately protected. 11 U.S.C. § 362(g).

Debtors argue that implementation of the amended chapter 13 plan constitutes adequate protection. Evaluating that argument requires consideration of the plan. The plan was not offered into evidence at the February 6th hearing, and its terms were not described by counsel. Due process, however, requires that Citicorp be given a chance to confront this "evidence" used against it. *See generally, Interstate Comm. Cmsn. v. Louisville & Nashville R. Co.*, 227 U.S. 88, 33 S.Ct. 185, 187, 57 L.Ed. 431 (1913); *In re Aughenbaugh*, 125 F.2d 887 (3d Cir.1942).[9] We must deter-

---

**8.** *See also Jay's Vending, Inc. v. McGowan*, 6 B.R. 241, 242 (parties testified that they would not remain in chapter 13 if relief were granted, and court denied relief); *In re McAloon*, 1 B.R. 766, 768 (court found that property was necessary to an effective reorganization simply because debtor testified that if § 362 relief were granted, he would not remain in chapter 13).

**9.** *Aughenbaugh* has spawned a line of cases which stand for the proposition that a bankrupt-cy court will not consider as evidence pleadings from the underlying case unless they were actually introduced into evidence. *See e.g., Hotel Assocs., Inc. v. Trustees of Central States (In re Hotel Assocs., Inc.)*, 3 B.R. 340, 342 n. 4, 1 C.B.C.2d 819, 6 B.C.D. 145, Bankr.L.Rep. ¶ 67,409 (Bankr.E.D.Pa.1980) (court may not delve into file to consider schedules); *Kardon Industries, Inc. v. East Redley Corp. (In re East Redley Corp.)*, 4 B.R. 288, 290, 2 C.B.C.2d 85, Bankr.L.Rep. ¶ 67,578 (Bankr.E.D.Pa.1980) (re-

mine whether Citicorp had a chance to confront the plan, since it is the crux of debtors' § 362 argument.

Due process can be provided even though a judge takes judicial notice of a matter or looks beyond items actually introduced into evidence. The extent to which the concept of judicial notice will be applied "... depends to a large degree upon considerations of expediency and justice under the particular circumstances of a case, as well as upon what it is that the court is asked to notice." *Funk v. Cmsnr. of Internal Revenue*, 163 F.2d 796, 801 (3d Cir.1947). Our predecessor, Chief Judge Goldhaber, has examined these concerns in a bankruptcy setting. *First Pennsylvania Bank v. Harris (In re Eagson Corp.)*, 37 B.R. 471, 480 (Bankr.E.D.Pa.1984). In *Eagson*, the Court was asked to take judicial notice of another adversary which involved identical parties and subject matter. *Id.* at 480. The court found no injustice in taking notice of that proceeding because it was not really a separate and distinct case. *Id.*

A close examination of the instant case reveals that it belongs on the continuum of exceptions which includes decisions like *Funk* and *Eagson*. Citicorp had adequate opportunity to consider and discuss the plan because the February 6th hearing was a consolidated hearing covering 1) Citicorp's § 362 motion; 2) Debtors' motion for a moratorium on payments; 3) Confirmation of the amended plan, and 4) Debtor's

§ 506 complaint. Each side was free to examine the plan in the context of this hearing. Citicorp may not have agreed with the terms of the plan, but we hold that it impliedly consented that those terms be a part of the consolidated record. Thus, we will be able to determine whether this plan creates adequate protection.

■ Under certain circumstances, periodic payments pursuant to a chapter 13 plan constitute adequate protection. *See e.g., In re Capodanno*, 83 B.R. 285, 287 (Bankr.E.D.Pa.1988); *In re Rouse*, 43 B.R. 380, 384, Bankr.L.Rep. ¶ 70,075 (Bankr.E.D.Pa.1984) *mtn. for reconsideration denied* 48 B.R. 236 (Bankr.E.D.Pa.1985); *GMAC v. English (In re English)*, 20 B.R. 877 (Bankr.E.D.Pa.1982), *aff'd* No. 82–4322 (E.D.Pa. November 11, 1983). Since the search for adequate protection is a balancing process, courts often base their decisions on the existence of periodic plan payments *plus* other factors. *See e.g., FNMA v. Henderson (In re Henderson)*, 21 B.R. 285, 287 (Bankr.E.D.Pa.1982) (combination of the fact that mortgage was FHA insured, that debtor had engaged in an honest effort and that periodic payments were offered); *Provident Savings Assn. v. Pannell (In re Pannell)*, 12 B.R. 51, 54, 4 C.B.C.2d 866 (Bankr.E.D.Pa.1981) (plan payments plus equity cushion); *Lee v. Trevose Fed'l Savings and Loan (In re Lee)*, 11 B.R. 84, 85 (Bankr.E.D.Pa.1981)

fusal to look at schedules); *In re Birchminster Corp.*, 6 B.R. 258, 260, 6 B.C.D. 976 (Bankr.E.D.Pa.1980) (refusal to look at schedules when only reference to schedule was in a brief); *In re Ratmansky*, 7 B.R. 829, 832 n. 10, 6 B.C.D. § 362, Bankr.L.Rep. ¶ 67,882 (Bankr.E.D.Pa.1980) (plan and chapter 13 statement would not be considered because not introduced into evidence); *Miners Nat'l Bank of Pottsville v. Schramm (In re Schramm)*, 12 B.R. 608, 610 (Bankr.E.D.Pa.1981) (schedules would not be considered on a § 362 motion); *In re Miller*, 15 B.R. 977, Bankr.L.Rep. ¶ 68,484 (Bankr.E.D.Pa.1981), *Goldberger v. Horan (In re Traffic Safety Co.)*, 21 B.R. 669, 6 C.B.C.2d 1297 (Bankr.E.D.Pa.1982) (testimony from earlier hearing would not be considered); *Public Cons. Dis. Co. v. Leecan (In re Leecan)*, 27 B.R. 907, 909–910 (Bankr.E.D.Pa.1983) (insufficient evidence actually presented during motion to dismiss); *In re Weiss*, 34 B.R. 346, 349 & n. 8 (Bankr.E.D.Pa.1983) (court refused to speculate whether pro-

ceedings in another bankruptcy impacted case); *Drinker, Biddle & Reath v. Bacher (In re Bacher)*, 47 B.R. 825, 827 (Bankr.E.D.Pa.1985) (court would not consider issues raised for first time in briefs); *In re Key*, 58 B.R. 59, 60 (Bankr.E.D.Pa.1986) (no evidence actually produced regarding previous § 362 and dismissal activity on case); *In re Paolino*, 72 B.R. 555 (Bankr.E.D.Pa.1987) (appraisal not introduced into evidence); *Butler v. Lomas & Nettleton Co. (In re Butler)*, 75 B.R. 528 n. 1 (Bankr.E.D.Pa.1987) (court refused to take judicial notice of schedules because such action was inconsistent with Rule 201 of the Federal Rules of Evidence); *In re Corbett*, 80 B.R. 32, 35 (Bankr.E.D.Pa.1987) (chapter 13 statement could not be considered). Indeed, even when a party requests that the court take judicial notice of an event, courts have refused to do so. *See, e.g., In re Chandler*, 77 B.R. 513, 520, Bankr.L.Rep. ¶ 71,970 (Bankr.E.D.Pa.1987), *aff'd* 1988 W.L. 34921 (E.D.Pa.1987).

(plan payments ordered and debtor had equity).

■ In this case, the amended chapter 13 plan provides that after the § 507 administrative expenses are paid in full, the trustee may pay Citicorp until Citicorp receives a sum equal to all delinquent pre-petition principal payments. We have no way to evaluate quantitatively whether this plan can adequately protect Citicorp's interest. We do not know the total of the administrative expenses.[10] The record is bereft of any reference to the actual number of *pre-petition* payments missed. Thus, we cannot even speculate that a plan is within the "realistic grasp" of debtors, *In re Crompton*, 73 B.R. 800, 809–12 (Bankr.E.D.Pa. 1987), because we do not know the magnitude of the debt that debtors must satisfy under the plan. Debtors fail to carry their burden of proving that Citicorp is adequately protected.

■ We also agree with Citicorp that debtors have not presented sufficient evidence of their need for a moratorium on plan payments. A moratorium involves a request by debtor that plan payments for a specified period be forgiven because debtor has suffered some unforseen, temporary loss of income. Because the decrease in funding caused by a moratorium may impede debtors' ability to successfully perform within the time limits specified in § 1322(c), and because the urgency of debtors' need for a moratorium may relate to the § 1325(a)(3) requirement that the plan be proposed in good faith, we carefully scrutinize requests for moratoriums.

■ Debtor husband offered testimony that he suffered "... a couple accidents up at work." N.T., p. 10. He said he was out of work for a month as a result of back problems and for three months as a result of lost strength in his arms. N.T., p. 10. He does not indicate whether these periods were overlapping or coterminous. This tes-

timony is not sufficiently specific to support a moratorium.

This leads us to the question of whether the plan should be confirmed. We have an independent duty to make that assessment. *In re Gurst*, 76 B.R. 985, 989 (Bankr.E.D. Pa.1987). Debtors' plan contains several paragraphs previously held to be inconsistent. One paragraph suggests that a moratorium may be granted using procedures inconsistent with our local rules. Another paragraph suggests that confirmation of the plan is a *prima facie* finding of good faith, which is a redundancy because we must separately make such a finding. Terms like these are "distasteful." *Id.*

Further, our holding that Citicorp may obtain relief from the stay moots the issue of confirmation. Although we would not be so presumptuous as to say that the *reason d'etre* for this plan has been eliminated, we do not see the need to evaluate the plan at the present time. Debtors are free, of course, to file a second amended plan for our consideration.

An appropriate order follows.

### ORDER

AND NOW, this 30th day of August, 1988, it is hereby ORDERED that (1) Citicorp holds an allowed, secured claim in the amount of $28,000, and that in all other respects the relief requested in Citicorp's § 506 complaint is denied as being moot in light of our holdings in the remainder of this order; (2) Citicorp's motion for relief from the automatic stay is hereby granted; (3) Debtors' motion for a moratorium is hereby denied, and (4) the confirmation of debtors' amended plan is hereby rendered moot.

---

**10.** Assuming we were to take judicial notice of the claims register, we could speculate further on this point. We draw a distinction, however, between considering the plan (which is the subject of this hearing) as evidence and digging into the otherwise unintroduced record for the claims register. Considering the claims register in this manner is exactly the type of action prohibited by *Aughenbaugh.*