**In re Billy LYNCH and Lola Lynch, Debtors.**

**In re Bessie Campbell WOODS, Debtor.**

**Bankruptcy Nos. 88–10623–B, 88–10657–B.**

United States Bankruptcy Court, W.D. Tennessee, E.D.

July 18, 1989.

---

David Hardee, Jackson, Tenn., for Bessie Campbell Woods.

Timothy B. Latimer, Jackson, Tenn., for Billy and Lola Lynch.

Ernie Gray, Jackson, Tenn., Standing Chapter 13 Trustee.

Harold F. Johnson, Jackson, Tenn., for GMAC.

James D. Senter, III, Humboldt, Tenn., for TransSouth Financial.

## MEMORANDUM OPINION AND ORDER CONCERNING MOTIONS TO DISMISS OR FOR RELIEF FROM THE STAY DUE TO NONPAYMENT OF SECURED CLAIMS

WILLIAM H. BROWN, Bankruptcy Judge.

In this consolidated opinion, the Court addresses the problems under the Bankruptcy Code brought about by the Chapter 13 debtors' inability or failure to pay the confirmed plan in full and the debtors' attempts to modify the confirmed plan so as to defer payments to other creditors while curing post-petition mortgage arrearages as well as making on-going mortgage payments. The following constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and the motions underlying this opinion are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(G) and (L).

In both cases before the Court, the debtors proposed plans for payment of allowed claims, which claims included both real estate mortgages on the debtors' principal residences and other secured claims, as well as unsecured claims. In both cases, General Motors Acceptance Corporation ("GMAC"), through counsel, and early in the case histories, entered into agreed orders with the debtors whereby the debtors bound themselves by those consent orders to specific terms and amounts and interest rates for payment to GMAC. These consent orders were incorporated or duplicated by their terms in the confirmed plans, and the debtors initiated plan payments which would have satisfied the payment schedules to GMAC. However, in both cases, for different reasons, the debtors fell behind either in their plan payments or in their ongoing mortgage payments so as to create post-bankruptcy arrearages on their

home mortgages. In both cases, GMAC filed motions to dismiss the cases for failure to comply with the confirmed plans, or in the alternative for relief from the stay so as to permit GMAC to recover its collateral, consisting of vehicles. The debtors of course responded that the vehicles were necessary to their ongoing reorganization efforts and to the maintenance of their employment.

In the Bessie C. Woods Chapter 13, GMAC has not received payments under the plan for one year due to the debtor's difficulties in making the ongoing plan payments; however, that debtor is now paying regularly and has paid a total of $6,204.00 into the plan. The debtor Woods agreed to pay GMAC $4,823.31 at $145.00 per month. In the Lynch case, GMAC has not received payments since April, 1989, and the plan provided that the secured amount payable to GMAC was $11,136.67 with monthly payments of $255.46.

 The Court first observes that it is concerned that these debtors who entered into consensual orders with GMAC have failed to comply with the terms of those consent orders, and consent orders should not be ignored so easily by debtors. Generally, a prior consent order becomes the binding law of the case and should be given preclusive effect. *See In re Monument Record Corp.,* 71 B.R. 853 (Bankr.M.D. Tenn.1987). Addressing that problem first, the Court concludes that these debtors, so long as they remain in Chapter 13, must pay the agreed upon secured claims of GMAC in full over the remaining life of their Chapter 13 plans, and no reductions in those secured amounts will be permitted in these Chapter 13 plans. The Court does not have before it a request by either debtor to surrender property and thereby reclassify the GMAC claim. *See In re Jock,* 95 B.R. 75 (Bankr.M.D.Tenn.1989). Rather, the Court is addressing the requested relief from the stay and directing that as a condition of denial of relief from the stay

to GMAC, these debtors will be required to pay those consensual secured claims in full.

Obviously, the default by these debtors in the consensual orders and the failure to meet the plan terms insofar as GMAC is concerned, has resulted in the necessity of modification of the plan so as to permit payment of GMAC over the remaining life of the plan. However, the debtors' ability to pay GMAC and other creditors as provided for in the plan is affected by the fact that both of these debtors have ongoing mortgage payments on their principal residences. Further, these debtors, like many debtors in Chapter 13, made a choice to retain their principal residences and attempt to maintain their ongoing mortgage payments, and in this district, the Chapter 13 trustees, as an assistance to the debtors, will pay the ongoing mortgage payments through the plan without charging a trustee's percentage on the ongoing mortgage payments. Or, the debtors, if they so choose, may make ongoing mortgage payments directly to the mortgagee outside of the plan. In these two cases, these debtors, like many other Chapter 13 debtors in this district, may have had pre-bankruptcy defaults on their home mortgages which they propose in their plans to cure under 11 U.S.C. § 1322(b)(5).[1] These plans were confirmed, with the Woods plan being confirmed on June 29, 1988 and the Lynch plan being confirmed on June 15, 1988, and the plans as confirmed contained specific provisions for the mortgages as well as other creditors, both secured and unsecured. After confirmation, these debtors incurred defaults in the ongoing mortgage payments resulting in post-petition mortgage arrearages, and the debtors unilaterally and without notice to the other creditors, attempted to alter their confirmed plans by adding the post-petition mortgage arrearages as a priority payment, which had the effect of staying plan payments except for the ongoing mortgages and except for the post-peti-

---

1. § 1322. Contents of Plan

(b) Subject to subsections (a) and (c) of this section, the plan may—

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default

within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

tion arrearages. In effect, the debtors accomplished a modification of their confirmed plans, which modification provided that the post-petition mortgage arrearages would be cured under 11 U.S.C. § 1322(b)(5), that the ongoing mortgage payments would resume and be maintained throughout the remaining life of the plan. The impact of this de facto modification on other creditors was severe. In the case of GMAC, it has been forestalled from receiving payments for up to one year in one case. In this district, the practice of the Chapter 13 trustee is to pay secured claims, as allowed, in full prior to the payment of any unsecured claims. Therefore, there has been no direct impact of these post-confirmation activities on the unsecured creditors to date, except that any delay in payment of secured claims would of necessity delay the payment of allowed unsecured claims and may result in the diminishment of the percentage paid to unsecured creditors.

The Court is most concerned that the practice of debtors, similarly situated to these, of seeking stays of payments other than the ongoing mortgage payments, while also attempting to cure post-petition arrearages through a de facto modification of confirmed plans, is abusive in that no notice to affected creditors has been given. Therefore, in addressing the problems presented by these two cases, the Court will attempt to establish guidelines for the standing Chapter 13 trustee in this division as well as for practitioners, debtors and creditors.

■■■ First, the Court observes that a plan, after confirmation under 11 U.S.C. § 1325, may be modified before completion of the plan payments, "upon request of the debtor, the trustee, or the holder of an allowed unsecured claim." 11 U.S.C. § 1329. However, § 1329 specifically provides that other provisions of the Code are applicable to post-confirmation modifications, including §§ 1322(a) and (b) and

1325(a). There is no provision in the Code for modification of the plan after confirmation except for § 1329, and this Court will require strict compliance with § 1329. Therefore, a Chapter 13 debtor will not be permitted to modify a confirmed plan without the filing of a proper motion for modification, which motion must be noticed to *all* scheduled creditors or at the very least, all creditors holding allowed claims in the confirmed Chapter 13 plan. Clearly, this notice would also need to be given to the standing Chapter 13 trustee. This notice, which would require an opportunity for hearing before the Court, would give all affected creditors the ability to object to the modification and to be advised of the impact of that modification on plan payments to each creditor.[2] Specifically, when the debtors, such as these, incur post-confirmation arrearages on home mortgages, and if the curing of those home mortgages will require modification of the confirmed plan payments to all other creditors, the debtors will not be permitted a de facto modification without complying with the requirements of § 1329. Further, the Court will not permit a modification of a confirmed plan based merely upon a consensual agreement between the debtor and the mortgagee. If the mortgagee consents to a curing of mortgage arrearages, either pre- or post-petition, within the life of the plan, which curing would not alter the other plan terms insofar as remaining creditors, this Court will consider the approval of such a consensual agreement. However, should the curing of mortgage arrearages affect other creditors, a formal motion, notice and hearing will be required as outlined herein. In the two cases at hand, these debtors have evaded the procedures under § 1329, but the Court does not suggest that the evasion was done in bad faith. Rather, these debtors were following a loosely defined practice in this division. The Court does not choose to penalize these debtors but does find and conclude that these debtors must treat the other credi-

---

**2.** Post-petition modification procedure is in contrast to modification prior to confirmation, which pre-confirmation modification may not require the same notice and hearing because the

confirmation hearing itself would presumably provide sufficient notice of the plan, as amended. *See,* 11 U.S.C. § 1323 and § 1324.

tors in their confirmed plans fairly. As previously stated, as to GMAC and other secured creditors in these two cases, these debtors will not be permitted to modify their plans in the future in any way, including future reductions of plan payments, which would adversely affect these secured creditors. Specifically, these debtors must pay out, over the remaining life of their plans, the allowed secured claims other than home mortgages, in full, including interest as provided in the plans.

The Court does not have before it the issue of attempted modifications of home mortgages secured by the debtors' principal homes and no issue under § 1322(b)(2) is presented.[3] However, the Court observes for guidance in the future that the incurring of post-petition mortgage arrearages may present difficult problems for debtors and mortgage creditors as to whether those post-petition arrearages constitute a modification of the home mortgages in violation of § 1322(b)(2) or in violation of the requirements of § 1322(b)(5) that ongoing mortgage payments be maintained "while the case is pending." These debtors, like all Chapter 13 debtors, must make a choice based upon the economies and realities of individual situations as to whether the debtors are financially able to maintain ongoing mortgage payments in order to retain their principal residences and at the same time retain other secured properties.

■ Further, the Court would point out that modification of a confirmed plan should require a showing of changed circumstances rather than be granted routinely on the mere request of a debtor or other authorized party. *See*, e.g., *In re Kehm*, 90 B.R. 117 (Bankr.E.D.Pa.1988); *In re Gronski*, 86 B.R. 428 (Bankr.E.D.Pa.1988); *In re Cherry*, 85 B.R. 11 (Bankr.W.D.N.Y. 1988); *In re Moseley*, 74 B.R. 791 (Bankr.C. D.Cal.1987).

■ Assuming that the debtor or other appropriate party is able to show a sufficient change of circumstance to justify a modification of a confirmed plan, and assuming that the debtor or other requesting party gives the appropriate notice of a modification motion to all creditors and the Chapter 13 trustee, and assuming that the modification does not adversely impact upon § 1322(b)(2) or (5) or otherwise violate § 1329, the plan may be modified. However, the need for post-petition modifications, especially as they arise from the delinquencies in post-petition mortgage arrearages, would be lessened if not obviated if the debtors would comply with § 1326(a)(1) which provides that the "debtor shall commence making the payments proposed by a plan within thirty days after the plan is filed." Further, § 1326(a)(1) provides that the Court may order another schedule of payments, and the standing Chapter 13 trustee in this division requests that the plan payments begin no later than the § 341 meeting of creditors. Barring a request by the debtor to delay that payment schedule, the Court is inclined to follow the standing Chapter 13 trustee's request, especially in view of the reality that the earlier plan payments begin, the less opportunity for post-petition mortgage arrearages to arise and the less opportunity for other defaults in secured plan payments to result. Further, the debtor's failure to timely begin plan payments may be a factor in the Court's examination of a debtor's request for post-confirmation modification and in deciding whether there has been an actual change in circumstance as opposed to an ongoing difficulty of the debtor to maintain plan and mortgage payments. The Court would further remind debtors and counsel that merely because the Bankruptcy Code permits the curing of home mortgages and the maintenance of ongoing mortgage payments and merely because this Court and the Chapter 13 trustee encourage debtors to maintain their

---

**3.** § 1322. Contents of Plan.
 (b) Subject to subsections (a) and (c) of this section, the plan may—
 (2) modify the rights of holders of secured claims, other than a claim secured only by a

security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

principal residences and mortgage payments, the need still exists for debtors to make an intelligent choice as to whether they are able to afford both the mortgage payments and payments to other secured creditors. Clearly, Chapter 13 debtors do not have the right to defer indefinitely the payments to other secured creditors while making ongoing mortgage payments and in the future this Court will look closely at the question of whether the debtors may actually afford in their plans to keep both the home, cars and other secured property. This examination by the Court will depend of course upon whether objections to the plans are filed by affected secured creditors. The need for such an examination is highlighted by the reality that the normal expectation for home mortgages is that they will remain secured or that the property will actually increase in value during the life of the plan whereas creditors holding security in depreciable assets such as vehicles are seeing those assets utilized by the debtors and depreciated, which may not be fair especially if those secured creditors are being delayed in receipt of their plan payments. Section 1325(a)(5)(B)(ii) provides that all secured creditors receive, if they have not accepted the plan, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim ... not less than the allowed amount of such claim." That section is not being complied with if GMAC, for example, does not receive regular plan payments so as to pay, over the life of the plan, the full value of their allowed secured claim.

Finally, the standing Chapter 13 trustee in this division routinely holds personal checks from a debtor for one entire disbursement period to make certain that those personal checks clear. Therefore, the Court would encourage debtors, especially if they have ongoing home mortgage payments and if those mortgage payments are being paid through the plan, to make their plan payments by either cashier's check or money order so as to eliminate the holding period for checks and to permit the ongoing mortgage payments to be made currently. This practice by debtors would further alleviate the problem of post-confirmation arrearages.

SO ORDERED.