**In re Ricky Lamar STAFFORD, Brenda Lee Stafford, Debtors.**

**BOWEST CORPORATION, Plaintiff,**

v.

**Ricky Lamar STAFFORD, Brenda Lee Stafford, Defendants.**

**Bankruptcy No. BK 90–70234. Motion No. S–2928.**

United States Bankruptcy Court, N.D. Alabama, W.D.

Oct. 29, 1990.

William K. Higgins, Jasper, Ala., for debtors/defendants.

William A. Ratliff, Birmingham, Ala., for plaintiff.

### MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

This matter came before the Court on Creditor Bowest Corporation's Objection to

Confirmation and Motion for Relief From Automatic Stay, filed by the Creditor on June 1, 1990. After a review of the record in the case in the context of the applicable law, Creditor's Objection to Confirmation is due to be OVERRULED and Creditor's Motion for Relief from Stay is due to be DENIED.

## FINDINGS OF FACT

Debtors, Ricky Lamar Stafford and Brenda Lee Stafford, filed a petition for protection under Chapter 13 of 11 U.S.C. on January 30, 1990. The Staffords had originally listed a $45,000.00 obligation to Bowest Corporation of San Diego, California, first mortgage on their home, as a non-plan secured obligation with a monthly payment of $428.00 to be made outside their Chapter 13 reorganization plan. The mortgage is on a mobile home that serves as the Stafford family residence. That initial listing of debt for the plan also included a $2,670.00 arrearage to Bowest for overdue payments from September of 1989 to January of 1990.

The $45,000.00 Bowest mortgage is the largest obligation in the total $66,638.69 in secured and unsecured debts listed by the Staffords at their bankruptcy. Other large debts included $3,700.00 for a pickup truck and $6,000.00 for a 1982 International Harvester cab-over truck Mr. Stafford used in his work. The Staffords listed a total of $4,908.14 in unsecured debt at the time of their bankruptcy. Of this total unsecured debt, $3,421.98 consisted of bills for various medical services, many of them for pediatric medicine, many of them in the hands of collection agencies by the time the petition was filed.

Mr. Stafford, a lease truck driver, reported approximately $12,000.00 in income for the year prior to filing bankruptcy; Mrs. Stafford, a substitute teacher, approximately $500.00. The couple listed three dependent children on their disclosure statement.

On April 3, 1990, this Court confirmed the Staffords' plan for reorganization of their personal finances under Chapter 13. The order, which provided for 100 percent payment to secured and unsecured creditors, granted Bowest a $75.00–per–month payment on the pre-petition arrearage filed as Claim No. 19. It also provided that: "Further, that the regular monthly payment to Bowest Corporation is to be paid direct by debtor to creditor; further, that said creditor is granted limited relief from automatic stay to contact the debtor by mail or telephone concerning the payment of post-petition (no pre-petition) monthly installment payments. (Motion No. S–2583)."

Then on April 24, 1990, the Court approved a modification to the Staffords' plan which added a $50.00 payment for arrearage and late charges for February, March, and April of 1990, and the regular monthly mortgage payments of $428.00 to the plan. The amendment, presented by Counsel for the Debtors, also raised the $475.00–per–month original installment to $953.00 to bring the regular mortgage payments and payments on both pre and post-petition arrearages into the plan.

On June 1, 1990, Creditor Bowest filed its Objection to Confirmation and Motion for Relief from Automatic Stay based on the contention that Chapter 13 plans may not be modified to cure post-petition arrearages. Bowest amended its motion August 16, 1990 to say that it had received no payments inside or outside of the plan and that the Staffords were in default for February through August of 1990 payments.

At a hearing that same day, August 16, 1990, the Court had set the final hearing for September 13, 1990. The Court also directed the Debtors to pay two payments, plus late charges, $890.24, to Bowest as adequate protection before the date of the September hearing.

Counsel for Debtors at the September hearing indicated that this amount had been paid directly to the attorney for Bowest. Bowest offered no evidence in support of its motion at the hearing. The Court overruled Bowest's Objection to Confirmation and entered an order denying its Motion to Lift Stay on September 21, 1990.

Bowest Corporation filed notice of appeal to the United States District Court for the Northern District of Alabama on October 2, 1990.

## CONCLUSIONS OF LAW

### I.

NOTHING IN THE PLAIN LANGUAGE OF OR CONGRESSIONAL INTENT BEHIND SECTION 1322(b) BARS A CURE OF POST–PETITION ARREARAGE.

A. POST–PETITION ARREARAGE ON A DEBTOR'S RESIDENCE MAY BE CURED BY MODIFICATION OF A CHAPTER 13 PLAN.

■ This Court has just addressed the issue of whether a debtor may cure post-petition default on debt for his/her primary residence with *Central Bank of the South v. Thomas*, 121 B.R. 94 (1990). The Court must take the better and seeming majority view [1] that a Debtor may modify his Chapter 13 plan under 11 U.S.C. § 1329 to cure "any default" including post-petition default as provided in 11 U.S.C. § 1322(b)(5).

The issue is treated at some length in the *Central Bank* case, but a short discussion is suitable here. As pointed out there, Congress anticipated that claims secured by the debtor's principal residence would be handled under Section 1322(b)(5)—not Section 1322(b)(2) [2] as suggested by Credi-

tor in its motion. Congressional Record statements on the Bankruptcy Reform Act of 1978 include the following:

Section 1322(b)(2) of the House amendment represents a compromise agreement between similar provisions in the House bill and the Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor's principal residence. It is intended that a claim secured by the debtor's principal residence may be treated with under Section 1322(b)(5) of the House amendment. (underlining for emphasis)

(124 Cong.Rec. H11106–07 (daily ed. Sept. 28, 1978); S17423 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini.)

11 U.S.C. § 1322(b)(5) provides the following for long-term debt in unambiguous language:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due. (underlining for emphasis)

---

**1.** *In re Ford*, 84 B.R. 40 (Bkrtcy.E.D.Pa.1988) considered this issue and concluded that a seeming majority of bankruptcy courts have allowed curing of post-petition default on long-term debt under Section 1322(b)(5). The rough proportion of cases found there continues in 1990. The Ford Court said:

The majority rule appears to be consistent with Collier's statement that, even in a situation where § 1322(b)(5) is applicable, "[i]t [§ 1322(b)(5) ] may be utilized to cure post-petition defaults." 5 COLLIER ON BANKRUPTCY, P 1322.09, at 1322–18 (15th ed. 1987). *See, e.g., In re McCollum*, 76 B.R. 797, 799–801 (Bankr.D.Ore.1987); *In re Nickleberry*, 76 B.R. 413, 416 (Bankr.E.D.Pa.1987); *In re Minick*, 63 B.R. 440, 442–46 (Bankr.D.D.C. 1986); *In re Canipe*, 20 B.R. 81, 83–84 (Bankr. W.D.N.C.1982); and *In re Simpkins*, 16 B.R. 956, 960–68 (Bankr.E.D.Tenn.1982). These

cases involve § 1322(b)(5), and hold that post-petition default of even a long-term obligation can be cured in a Plan despite the protections for long-term lenders provided in § 1322(b)(5), and the mandate of that Code section that the debtor "provide for … maintenance of payments while the case is pending" on an obligation on which the last payment is due after the last plan payment. *Ford* at 44.

**2.** 11 U.S.C. § 1322(b)(2) reads as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

Neither House nor Senate reports differentiate between pre or post-petition default when they discuss the "cure" of arrearage under Section 1322(b)(5). The House report provides the following history concurrent with the adoption of the Bankruptcy Act of 1978:

> Paragraph (5) (of Section 1322(b)) concerns long-term debt, such as mortgage debt. It permits the plan to provide for the curing any default within a reasonable time, and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.... (underlining for emphasis)

H.R.Rep. No. 595, 95th Cong. 1st Sess. 429 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6384.

The Senate report likewise defined the goal of Section 1322(b)(5) as "(5) provide for curing any default on any secured or unsecured claim on which the final payment is due after the proposed final payment on the plan;" ... (underlining for emphasis)[3]

This Court's role is implementing what appears to be the unambiguous language of the statute to allow debtors in a Chapter 13 reorganization plan to cure post-petition default. A non-all-inclusive listing of recent cases adopting the view that post-petition default can be cured in similar circumstances includes: *In re Gadlen*, 110 B.R. 341 (Bkrtcy.W.D.Tenn.1990); *In re Davis*, 110 B.R. 834 (Bkrtcy.W.D.Tenn.1989); *In re Lynch*, 109 B.R. 792 (Bkrtcy.W.D.Tenn. 1989); *In re Ford*, 84 B.R. 40 (Bkrtcy.E.D. Pa.1988) and *In re McCollum*, 76 B.R. 797 (Bkrtcy.D.Or.1987).

The courts in these cases are in accord with the most respected and universally accepted treatise on bankruptcy law, the 15th edition of *Collier on Bankruptcy*.[4] "The debtor may wish to modify the plan for any of a number of reasons. A debtor may fall behind on post-petition mortgage payments and then seek to modify the plan to provide for a cure of the post-petition default," *Collier* says at P. 1329.01 (underlining for emphasis).

If the United States Congress had intended to limit the debtor's ability to cure default to pre-petition default it could, and would, have said so in the statute and the contemporaneous legislative history. As the Code now stands, since there is no evidence of legislative intent to the contrary, "any default" must be read to mean "any default"—not "any pre-petition default but not any post-petition default."

In the real world, where debtors get sick, change jobs, get married, have babies, have automobile accidents, etc., a debtor has a right to modify his or her plan to meet such changes of circumstances.

## B. DESPITE THE CLEAR STATUTORY LANGUAGE, THERE IS SOME DISAGREEMENT ON THIS ISSUE.

Some courts have held that a Chapter 13 debtor may not utilize Section 1329 to modify the plan to cure post-petition arrearages. As Counsel for Bowest points out in the Creditor's Motion, the United States District Court for the Northern District of Alabama so held in *In re Hollis*, 105 B.R. 1003 (D.N.D.Ala.1989). That decision vacated an order of this Court denying South-

---

**3.** S.Rep. No. 989, 95th Cong., 2d Sess. 141 (1978), U.S.Code Cong. & Admin.News 1978, p. 5927.

**4.** *See* 5 L. King, Collier on Bankruptcy P. 1329.-01 (15th ed.1989):
**Modification of Plan After Confirmation. § 1329.**
**[1] —In General.**
**[a] —Modification at the Request of the Debtor.**
Chapter 13 debtors often encounter circumstances during the extension period which were unforeseen at the time of confirmation. Further persistent deterioration in a debtor's financial condition after confirmation usually leaves only four courses of action open to the debtor. The debtor may convert the case to chapter 7, apply for a hardship discharge under 1328(b), dismiss the case, or modify the chapter 13 plan in response to prevailing conditions. A debtor is not eligible for discharge relief under section 1328(b) in circumstances when a post-confirmation modification of the plan is practicable. (underlining for emphasis)

east Bank relief from stay and directing post-confirmation arrearage payments.

The District Court in *Hollis* held that a Chapter 13 debtor could not cure post-confirmation defaults on his residence. However, the *Hollis* holding was based on a Colorado decision with an overall rationale which is inapplicable to this situation.

The Alabama District Court cited *In re Nicholson*, 70 B.R. 398 (Bkrtcy.D.Colo. 1987) as a main basis for its ruling, though that case ruled on Section 1322(b)(3),[5] not Section 1322(b)(5) which Congress intended to cover long-term debt. *Nicholson's* holding was also rooted in the minority theory that confirmation, by virtue of Section 1327, revested property in the debtor and thus created a *new* mortgage obligation which precluded the automatic stay from having any effect on post-petition arrearages. This Court does not agree with that view of the operation of Chapter 13 protections.

The *Hollis* view would have the absurd result that a Chapter 13 plan could cure a pre-petition default of thousands of dollars, but that a post-petition default of $1.00 could not be cured. It would have the effect of reading the Section 1329 "Modification of Plan after Confirmation" out of the Bankruptcy Code. This view would allow a Section 1329 modification to *increase* payments to creditors or to reduce the time for payment to creditors but not allow a Section 1329 modification to *decrease* payments or extend the time for payments to creditors.

For 11 U.S.C. § 1329(a)(1) and (2) provides the following:

(a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or <u>reduce</u> the amount of payments on claims of a particular class provided for by the plan;

(2) <u>extend</u> or reduce the time for such payments.... (underlining for emphasis)

Congress clearly understood that a Chapter 13 plan would have to be modified during the pendency of the plan to meet changed circumstances.

## C. THIS COURT MUST ADOPT THE VIEW THAT SEEMS TO EXPRESS BEST THE CONGRESSIONAL POLICY BEHIND CHAPTER 13, AND WHICH IS MOST IN KEEPING WITH STATUTORY LANGUAGE.

The policy goal set by Congress for the reorganization chapters of 11 U.S.C. is providing the debtor with his/her best chance at a fresh start while equitably sharing the debtor's resources among creditors. Often, these Congressional imperatives conflict with rights creditors would have enjoyed under state law if the debtor had not sought the protection of the Bankruptcy Code. Where a protection given a debtor under the Bankruptcy Code conflicts with a right given a creditor by state law, the Bankruptcy Code supersedes under the supremacy clause of the United States Constitution.

Since the Bankruptcy Court's role is to implement the will of Congress as embodied in this Code, this Court must hold that Chapter 13 debtors may cure post-petition defaults on their home mortgage under the provisions of 11 U.S.C. §§ 1322(b)(5) and 1329(a)(1) and (2).

## II.

## BOWEST'S MOTION FOR RELIEF FROM STAY IS DUE TO BE DENIED UNDER SECTION 362(d)

■ Bowest Corporation filed a motion with the Court asking that it be granted relief from stay under 11 U.S.C. § 362(d).[6]

---

**5.** 11 U.S.C. § 1322(b)(3) provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—
(3) provide for the curing and waiving of <u>any default</u>; (underlining for emphasis)

**6.** 11 U.S.C. § 362(d)(1) and (2) provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating,

**114**

Normally, Section 362(f) would provide that the creditor had the burden of proof on the issue of the debtor's equity; the debtor, the burden on other issues. In this case, a hearing was set on the Creditor's motion and the Creditor introduced no evidence whatsoever to support its motion. Consequently, that motion must be denied.

It might also be noted that the Staffords' Chapter 13 plan was confirmed at 100 percent repayment for both secured and unsecured creditors. The security interest at issue here is in the family home which houses this couple and their three children. Consequently, the risk of loss of the property or other failure to be able to locate the Debtors is extremely low.

Bowest Corporation is included in the Stafford Chapter 13 plan for the full amount of its $428.00 regular monthly mortgage payment, a $75.00–per–month payment on pre-petition arrearage and a $50.00–per–month payment on the post-petition arrearage. Thus Bowest Corporation must be regarded as adequately protected by the security it holds in the Debtors' residence and the payments ordered by this court. Furthermore, the Court has entered an order routing the full payment toward the Debtor's plan to the Chapter 13 Trustee by payroll deduction.

Consequently, the Court may not grant Bowest Corporation relief from stay based on Section 362(d) since it offered no evidence in support of its motion.

### CONCLUSION

When the documentary evidence in this case is taken into account, the Court must overrule Bowest Corporation's objection to the confirmation of the Staffords' Chapter 13 plan for reorganization. Likewise, the Court must deny Bowest's Motion for Relief From Stay since Bowest offered no evidence in support of its motion.

annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property under subsection (a) of this section, if—

This memorandum shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. A separate order has been entered consistent with this opinion.

DONE AND ORDERED.

(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.