**In the Matter of Ronnie Lee COTTON, Debtor.**

**Bankruptcy No. 87–50527.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Aug. 10, 1989.

P. Craig Davis, Macon, Ga., for debtor.

Thomas E. Prior, Atlanta, Ga., for Glenfed Mortg. Corp.

Elizabeth L. McBrearty, Deputy Trustee, Macon, Ga., for trustee.

## STATEMENT OF THE CASE

ROBERT F. HERSHNER, JR., Chief Judge.

Ronnie Lee Cotton, Debtor, filed a petition under Chapter 13 of the Bankruptcy Code on March 17, 1987. His plan was confirmed on May 28, 1987. Debtor filed a "Motion for Modification of Plan After Confirmation" on May 2, 1989. The modification seeks, in relevant part, to add a postpetition mortgage arrearage which Debtor owes to Glenfed Mortgage Corporation (Glenfed). Debtor assumed the mortgage postpetition without the consent of Camille Hope, standing Chapter 13 Trustee.

Glenfed filed an "Objection to Modification of Debtor's Chapter 13 Plan" on June 2, 1989. Debtor and Glenfed filed a stipulation of facts on June 30, 1989. A hearing on the objection was held on June 30, 1989. At the conclusion of the hearing, the Court invited the parties to submit briefs. The Court, having considered the facts and the arguments of counsel, now publishes its findings of fact and conclusions of law.

## FINDINGS OF FACT

On November 4, 1983, Melvin Alan Porter and Darlene Johnson Porter executed a security deed in favor of P.B. Mortgage Corporation. The security deed describes the property conveyed as 2635 Kent Drive, Macon, Georgia. The security deed was subsequently assigned to Glenfed. Glenfed is the holder in due course of the security deed. Debtor's Chapter 13 Statement discloses that at the time of filing his Chapter 13 case, Debtor resided at 2635 Kent Drive and paid $450 monthly rent.

In April 1988, Debtor purchased the 2635 Kent Drive residence from James NeSmith.[1] Debtor assumed responsibility for making payments on the security deed without the consent of Trustee. Debtor failed to make the required payments. Glenfed did not receive notice of Debtor's bankruptcy case until it made inquiry into foreclosing on the property.

1. The facts do not show how James NeSmith acquired the property.

Debtor has made $1880 in repairs on the residence since he purchased it. Debtor was in arrears in the amount of $4400.81 on the date of the hearing. The arrearage represents all payments due from October 1988 through June 1989, inclusive.

## CONCLUSIONS OF LAW

Debtor wants to modify his plan after confirmation to add into the plan the postpetition arrearage owed to Glenfed.[2] Modification of a plan after confirmation is governed by section 1329(a) of the Bankruptcy Code,[3] which provides:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> >
> > (2) extend or reduce the time for such payments; or
> >
> > (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C.A. § 1329(a) (West Supp.1989).

The plain language of section 1329(a) does not permit modification of a Chapter 13 plan for the purpose of adding an arrearage on a mortgage obligation which was assumed postconfirmation. The courts must apply the law enacted by Congress. The statutory language clearly expresses congressional intent, and, in the absence of any ambiguity, a court may not read another meaning into the statute. *Tidwell v. AmSouth Bank, N.A. (In re Cavalier Homes of Georgia, Inc.)*, 102 B.R. 878 (Bankr.M.D.Ga.1989) (citations omitted). Debtor cites no authority in support of his position. The Court is persuaded that

Debtor may not modify his Chapter 13 plan to add his postpetition obligation to Glenfed.

Another issue is whether a postpetition claim for the arrearage may be filed under section 1305 of the Bankruptcy Code.[4] Section 1305 provides:

> (a) A proof of claim may be filed by any entity that holds a claim against the debtor—
>
> > (1) for taxes that become payable to a governmental unit while the case is pending; or
> >
> > (2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.
>
> (b) Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under section 502(a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.
>
> (c) A claim filed under subsection (a)(2) of this section shall be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained.

11 U.S.C.A. § 1305 (West 1979). Section 1305(a) is permissive. There is no requirement that a claimant file a proof of claim for a postpetition claim. 5 *Collier on Bankruptcy*, ¶ 1305.01[2] (15th ed. 1989); see also *Federal National Mortgage Association v. Moore (In re Shahid)*, 27 B.R. 673, 674 (Bankr.S.D.Ohio 1982). The holder, Glenfed, has not filed a proof of claim.

The postpetition claim must be for a con-

---

**2.** Debtor also wants to add a debt of $281 owed to James and June NeSmith. The NeSmiths have not objected to the modification and this matter is not at issue.

**3.** 11 U.S.C.A. § 1329(a) (West Supp.1989).

**4.** 11 U.S.C.A. § 1305 (West 1979).

sumer debt[5] and for property or services necessary for the debtor's performance under the plan. The policy behind the allowance of postconfirmation claims is to allow the debtor to obtain additional credit for unforeseen circumstances which might otherwise break the debtor's marginal budget. *See* 5 *Collier on Bankruptcy* ¶ 1305.01[2][c] (15th ed. 1989). The legislative history cites auto repairs and medical bills as examples of products or services necessary for a debtor's performance under the plan. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 427–28 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

Debtor claims that the property is necessary for his performance under the plan because the property is Debtor's personal residence. The Court agrees that Debtor must have a place to live. However, it was not necessary for Debtor to purchase the residence.[6] Debtor could have continued to rent the residence. The purchase of the residence was not necessary for Debtor's performance under the plan. The Court sustains Glenfed's objection.

---

5. Consumer debt means a debt incurred by an individual primarily for a personal, family, or household purpose. 11 U.S.C.A. § 101(7) (West 1979).

6. The facts show that Debtor was renting the residence when he filed his petition and apparently has continued to live there after purchasing the residence.