In re James Webster HOLLIS, Debtor.

**SOUTHEAST BANK, N.A. Appellant,**

v.

**James Webster HOLLIS, Appellee.**

**Civ. A. No. 89–AR–0949–W.
Bankruptcy No. 88–05270.**

United States District Court,
N.D. Alabama, S.D.

Sept. 22, 1989.

**1004**

Charles E. Vercelli, Jr., Copeland Franco Screws & Gill, P.A., Montgomery, Ala., for appellant.

Albert G. Lewis, III, Turner & Turner, P.C., Tuscaloosa, Ala., for appellee.

## MEMORANDUM OPINION

ACKER, District Judge.

This is an appeal by Southeast Bank, N.A., from a decision of the Bankruptcy Court for the Northern District of Alabama, Honorable George S. Wright, sitting. The debtor is James Webster Hollis, who, on June 1, 1988, filed a Chapter 13 petition in Case No. 88–05270, which automatically stayed his creditors from proceeding against him. Hollis' creditors included Southeast Bank which held a first mortgage on his residence securing a promissory note in the original sum of $33,631.20. But for the automatic stay Southeast Bank would have been entitled to foreclose under the terms of its mortgage. In fact, at the time the petition was filed, Hollis was several months past due in his required monthly mortgage payments, and this was undoubtedly the reason why he filed his petition.

In response, Southeast Bank filed a proof-of-claim of a prepetition arrearage of $1,212.80. On July 6, 1988, the bankruptcy court confirmed a plan for Hollis, requiring, inter alia, the Standing Trustee to pay $45.00 per month to Southeast Bank from Hollis' earnings. This amount was to be applied to the prepetition arrearage. Hollis continued to be responsible for making the remaining regular monthly mortgage payments directly to Southeast Bank.

On February 24, 1989, Southeast Bank filed a motion for relief from the automatic stay, alleging that Hollis had failed to make five out of nine regular monthly mortgage payments after the confirmation order of July 6, 1988. Hollis did not file an answer denying any of the averments of Southeast Bank's said motion, and Hollis failed to appear when the motion was set for hearing on March 23, 1989.

On March 30, 1989, the bankruptcy court issued an order denying Southeast Bank's motion for relief from the stay, directing Southeast Bank to file a new proof-of-claim for a new, post-confirmation arrearage of $1,474.40, and directing that future monthly mortgage payments be paid by the Standing Trustee rather than directly by Hollis to Southeast Bank. Southeast Bank appeals this order, claiming that the bankruptcy court erred as a matter of law in several respects.

### I. Burden of Proof

Southeast Bank first says that the bankruptcy court erred because 11 U.S.C. § 362(d)(1) provides that the court "*shall* grant relief from the stay … *for cause*, including the *lack of adequate protection* of an interest in property…." (emphasis supplied). Southeast Bank argues that 11 U.S.C. § 362(g)(2) places the burden on the *debtor* to prove that there is *no* "cause" to continue the stay in place, and that inasmuch as the debtor here did not show up for the hearing and made no attempt whatsoever to explain or to justify his post-confirmation default, he failed to meet his burden.

Hollis responds with the argument that the burden of proof on these issues was on Southeast Bank. He does not respond with the obvious argument that the phrases "for cause" and "adequate protection" may call for mixed findings of fact and law by the bankruptcy court, making a de novo review difficult, if not impossible, no matter who had the burden of proof, and arguably necessitating the indulgence of a presumption in favor of the bankruptcy court's exercise of its fact-finding responsibility. Instead, Hollis' brief devotes most of its time to the proposition that Southeast Bank offered no evidence in support of its motion.

In this court's view, the ultimate "right-and-wrong" in this situation should not, and does not, turn on which party had the burden of proof, but rather on where the undisputed facts inexorably lead as a mat-

ter of law. The proposition that the denial of relief from the stay was proper because Southeast Bank failed to meet its supposed burden of proof is unavailing for several reasons. First, Hollis never denied a single allegation contained in Southeast Bank's motion. Second, the bankruptcy court did not mention, much less rely upon, any alleged failure by Southeast Bank to meet any burden of proving the facts which it had alleged. Third, the bankruptcy court necessarily agreed with the central factual allegations of Southeast Bank, namely, that Hollis had badly defaulted, post-petition and post-confirmation. The bankruptcy court accepted totally the figures submitted by Southeast Bank.

## II. Discretion by Bankruptcy Court Under § 362(d)(1)

This court proceeds on the assumption that the bankruptcy court has broad discretion to decide whether or not there is "cause" for relief from the automatic stay, and whether or not the secured creditor has "adequate protection," that is, where the pertinent facts are disputed or can lead to different conclusions.

Unless it was the intention of the Eleventh Circuit in *In re Saylors*, 869 F.2d 1434 (11th Cir.1989), reversing this court in *In re Saylors*, 98 B.R. 1005 (N.D.Ala.1988), to give bankruptcy judges virtually free rein to take whatever action they deem appropriate to prevent the foreclosure of a mortgage on the home of a debtor, and further that a debtor filing almost any paper to accomplish this end can, with impunity, be found to be acting in "good faith," there is no Eleventh Circuit authority on the issue. Not believing that this was the intention of the Eleventh Circuit in *In re Saylors*, this court looks elsewhere for guidance.

If the bankruptcy court here found that Southeast Bank had "adequate protection," the finding must have been based on the new preferential payments to be applied toward the additionally accumulated arrearage, accomplished by wage deduction from Hollis (this was nothing new), and based further on the direct payment of the future regular mortgage payments by the Standing Trustee, who, of course, cannot

be asked to make the payments out of her own pocket. Bankruptcy judges undoubtedly have more experience than this court has in predicting the incidence of compliance with payment orders in particular Chapter 13 cases, and although this particular bankruptcy judge proved to be "bad wrong" in finding Southeast Bank "adequately protected" in the first confirmation order he entered in this case, this court is not in a position to substitute its judgment for what may well turn out to be another misjudgment by the bankruptcy judge. The fact is that some bankruptcy judges are more easily persuaded than others by a debtor of the debtor's good intentions and of his ability to perform. This is an unavoidable fact of human nature which no amount of jurisprudential overlay can change. "Discretion" covers many a misjudgment. While saying this, this court confesses that it, too, has a heart. The humanity of the courts, and particularly of the bankruptcy courts, should not be completely straightjacketed by the black robe and the oath of office, but neither should the constraints of the nation's public policy, as represented by express Congressional enactments, be overlooked or sidestepped.

## III. Where Discretion Stops and Absolute Rules Begin

A more important question, if not the crucial question, raised by Southeast Bank comes from a reading of 11 U.S.C. § 1322(b)(2) and (5), which provides that "a Chapter 13 plan may not modify the rights of a creditor holding a claim secured only by a mortgage on the debtor's principal residence except to cure pre-petition defaults within a reasonable time." *In re Nicholson*, 70 B.R. 398, 401 (Bankr.D.Colo. 1987). The bankruptcy court in *In re Nicholson* decided simply that where Congress in § 1322(b)(3) allows "the curing or waiving of any default" it was referring to defaults which occur *pre-petition* and not defaults which occur *post-plan*. The bankruptcy court in *Nicholson* logically concluded that the debtor was not entitled to cure his post-confirmation defaults. This court agrees with the *Nicholson* court. The Bankruptcy Act in this situation contains

an absolute principle which leaves no room for a routine or predictable exercise of discretion that invites and even encourages post-confirmation debtor default in Chapter 13 cases.

Decided next door in Georgia a month ago was *In re Ronnie Lee Cotton*, 102 B.R. 891 (Bankr.M.D.Ga.1989). If the phrase "on all fours" has any meaning, it applies to this case. There, the debtor, Cotton, filed a Chapter 13 petition. His plan was confirmed. Thereafter, he filed a motion to modify his plan, seeking to add a newly accrued, post-confirmation home mortgage arrearage. Like Southeast Bank in the instant case, the mortgagee, there Glenfed, strenuously objected to the modification. The bankruptcy court, Honorable Robert F. Hershner, Jr., held:

> The plain language of section 1329(a) does not permit modification of a Chapter 13 plan for the purpose of adding an arrearage on a mortgage obligation which was assumed postconfirmation. The courts must apply the law enacted by Congress. The statutory language clearly expresses congressional intent, and, in the absence of any ambiguity, a court may not read another meaning into the statute. [citations omitted]. Debtor cites no authority in support of his position. The Court is persuaded that Debtor may not modify his Chapter 13 plan to add his postpetition obligation to Glenfed.

As Judge Hershner sees it, there was no area for an exercise of "discretion" or a finding of "good faith" to justify a post-confirmation default. The statutory language in 11 U.S.C. § 1329(a) leaves no such room. This court agrees with Judge Hershner.

In *In re McKissie*, 103 B.R. 189 (Bankr. N.D.Ill.1989), a not dissimilar issue was presented, although there the debtor closely followed one Chapter 13 case with another Chapter 13 case. The *McKissie* facts are not as similar to the facts in this case as to the facts in *In re Jones*, 105 B.R. 1007 (N.D.Ala.1989), which was consolidated with this appeal because of the similarity of issues. *McKissie* dealt with the strategic use of serial filings and the implica-tion of the strategy on the issue of "good faith." Without here jumping ahead to discuss the issues presented by the appeal in *In re Willie Charles Jones*, suffice it to say that *McKissie* frowns on the overt manipulation of a bankruptcy court for the purpose of preventing a foreclosure sale, and frowns on the strategy to such an extent that sanctions may be called for under Rule 11, F.R.Civ.P.

This court has not found a single case which would recognize the right of a bank-ruptcy court to modify a Chapter 13 plan either to add a post-confirmation arrearage or to modify the plan so as to direct a debtor's regular monthly mortgage payments to be made through the Trustee after the debtor has already defaulted under the original plan which required direct payments.

Because Southeast Bank appealed promptly after the bankruptcy court entered its order, there are no facts in the record to indicate when the Trustee's office here could begin making payments pursuant to the wage deduction order, and no facts to demonstrate the manner in which the wage deduction order is being imple-mented, if it is. Nevertheless, this court takes judicial notice of the fact that a snarl exists, a snarl which is *inherent in the procedure itself as ordered by the bank-ruptcy court.* Construed most favorably to Hollis, the rights of Southeast Bank have been modified to such an extent that its regular payments will be received, if at all, later in the month rather than on the fifth as expressly provided by the note and mortgage. Furthermore, the purported modification does not account for late fees or additional interest in the event of late payments as expressly provided for in the note and mortgage. There is no reference in the order to the mortgagor's obligation to pay for keeping the property insured or for paying the ad valorem taxes. If the regular payments had been made as called for by the original Chapter 13 order, there would be an escrow account at Southeast Bank to cover these items. Now, apparent-ly, the bankruptcy court expects Southeast Bank to come "out-of-pocket" to protect both its interest and that of Hollis from casualty loss and from tax sale. Lastly, between the entry of the new order and the

time the first payment from the Trustee is to be received, a considerable period of time will elapse (or has elapsed) during which Southeast Bank will receive (or has received) *no* monthly payments. The new obligations are so vague and ill-defined that they are likely to create more problems than they can possibly solve.

If a Chapter 13 plan can be amended once to fold in a new arrearage, then there is nothing to prevent a second and a third amendment or modification to the plan, each time adding a new post-confirmation arrearage. On this assumption, is the mortgagee supposed to wait with its tin cup while its contractual rights and its security interest are continually amended and/or suspended, all because done in "good faith" and for "good cause"?

In addition to Hollis' argument about the burden of proof, he points out that the Bankruptcy Act was designed to provide a debtor with a "fresh start." The question, however, is: *"How many 'fresh starts' can a debtor obtain in one Chapter 13?"* Or, put another way: *"How many times can a debtor 'cure' his repeated defaults?"* The court agrees with Judge Hershner that the statute itself removes any discretion by the bankruptcy court and says: "One post-petition, post-confirmation default is one too many!" If there is an exception to this rule, Hollis does not fit it.

IV. The Consolidated Appeal

The reason *In re Willie Charles Jones* was consolidated with this appeal is that it involves the same creditor, although confronted with a different debtor strategy designed to accomplish the same purpose, namely, to stop a residential foreclosure. Nevertheless, the two cases are sufficiently distinguishable so that *In re Willie Charles Jones* will be looked at in a separate opinion.

V. The Decision

In view of the foregoing, a separate order vacating the order entered by the bankruptcy court will be entered.