In re Ricky Lamar STAFFORD and Brenda Lee Stafford, Debtors.

BOWEST CORPORATION, Appellant,

v.

Ricky Lamar STAFFORD and Brenda Lee Stafford, Appellees.

No. CV–90–N–2384–W.

United States District Court, N.D. Alabama, W.D.

Jan. 25, 1991.

William A. Ratliff, Wallace Brooke & Byers, Birmingham, Ala., for appellant.

William K. Higgins, Jr., Beaird Thomas & Higgins, Jasper, Ala., for appellees.

C. Michael Stilson, Tuscaloosa, Ala., pro se.

## MEMORANDUM OF OPINION

EDWIN L. NELSON, District Judge.

This matter is before the court on appeal, pursuant to 28 U.S.C. § 158(a), from final orders of the United States Bankruptcy Court for the Northern District of Alabama which confirmed the debtors' modified Chapter 13 plan and denied the appellant's motion for relief from the automatic stay provisions of 11 U.S.C. § 362, 121 B.R. 109.[1] The court has carefully examined the entire file and applicable provisions of law and, pursuant to Bankruptcy Rule 8012(3), specifically finds that "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Accordingly, the court will decide the appeal on the basis of the record and briefs of counsel and without oral argument.

 The court starts from the settled rule that findings of fact by the Bankruptcy Judge must be accepted by this court unless they are clearly erroneous, giving due regard to the opportunity of the court below to judge the credibility of the witnesses first hand. *Federal Landbank of Jackson v. Cornelison,* 901 F.2d 1073 (11th Cir.1990). The deference due the bankruptcy court's factual findings is not applicable to its conclusions of law. On such conclusions, this court's review is *de novo. In re Sublett,* 895 F.2d 1381, 1383 (11th Cir.1990). While there was no evidence received at the hearing on the amended Chapter 13 plan, the Bankruptcy Judge gleaned certain factual findings from the record and the appellant does not seriously contend that those factual findings are clearly erroneous. Judge Wright's findings were:

Debtors, Ricky Lamar Stafford and Brenda Lee Stafford, filed a petition for protection under Chapter 13 of 11 U.S.C. on January 30, 1990. The Staffords had originally listed a $45,000.00 obligation to Bowest Corporation of San Diego, California, first mortgage on their home, as a non-plan secured obligation with a

---

1. The orders appealed from were entered by Chief Bankruptcy Judge George S. Wright.

monthly payment of $428.00 to be made outside their Chapter 13 reorganization plan. The mortgage is on a mobile home that serves as the Stafford family residence. That initial listing of debt for the plan also included a $2,670.00 arrearage to Bowest for overdue payments from September of 1989 to January of 1990.

The $45,000.00 Bowest mortgage is the largest obligation in the total $66,638.69 in secured and unsecured debts listed by the Staffords at their bankruptcy. Other large debts included $3,700.00 for a pick-up truck and $6,000.00 for a 1982 International Harvester cabover truck Mr. Stafford used in his work. The Staffords listed a total of $4,908.14 in unsecured debt at the time of their bankruptcy. Of this total unsecured debt, $3,421.98 consisted of bills for various medical services, many of them for pediatric medicine, many of them in the hands of collection agencies by the time the petition was filed.

Mr. Stafford, a lease truck driver, reported approximately $12,000.00 in income for the year prior to filing bankruptcy; Mrs. Stafford, a substitute teacher, approximately $500.00. The couple listed three dependent children on their disclosure statement.

On April 3, 1990, this Court confirmed the Staffords' plan for reorganization of their personal finances under Chapter 13. The order, which provided for 100 percent payment to secured and unsecured creditors, granted Bowest a $75.00–per–month payment on the prepetition arrearage filed as Claim No. 19. It also provided that: "Further, that the regular monthly payment to Bowest Corporation is to be paid direct by debtor to creditor; further, that said creditor is granted limited relief from automatic stay to contact the debtor by mail or telephone concerning the payment of post-petition (sic) (no pre-petition) (sic) monthly installment payments. (Motion No. 5–2583)."

Then on April 24, 1990, the Court approved a modification to the Staffords' plan which added a $50.00 payment for arrearage and late charges for February, March, and April of 1990, and the regu-

lar monthly mortgage payments of $428.00 to the plan. The amendment, presented by Counsel for the Debtors, also raised the $475.00–per–month original installment to $953.00 to bring the regular mortgage payments and payments on both pre and post-petition arrearages into the plan.

On June 1, 1990, Creditor Bowest filed its Objection to Confirmation and Motion for Relief from Automatic Stay based on the contention that Chapter 13 plans may not be modified to cure post-petition (sic) arrearages. Bowest amended its motion August 16, 1990 to say that it had received no payments inside or outside of the plan and that the Staffords were in default for February through August of 1990 payments.

At a hearing that same day, August 16, 1990, the Court had set the final hearing for September 13, 1990. The Court also directed the Debtors to pay two payments, plus late charges, $890.24, to Bowest as adequate protection before the date of the September hearing.

Counsel for Debtors at the September hearing indicated that this amount had been paid directly to the attorney for Bowest. Bowest offered no evidence in support of its motion at the hearing. The Court overruled Bowest's Objection to Confirmation and entered an order denying its Motion to Lift Stay on September 21, 1990.

Bowest Corporation filed notice of appeal to the United States District Court for the Northern District of Alabama on October 2, 1990.

On this appeal Bowest argues: (1) the bankruptcy court is not authorized under the provisions of 11 U.S.C. § 1329(a) to modify a Chapter 13 reorganization plan to cure a postpetition arrearage; (2) under 11 U.S.C. § 1322(b) the rights of a creditor whose claim is secured only by a mortgage on the debtor's principal residence may not be modified except to cure a pre-petition default; and (3) it is entitled to relief from the automatic stay provisions of 11 U.S.C. § 362 because its interest is not adequately

protected under the amended Chapter 13 plan.

■ In the case of *In re Hollis*, 105 B.R. 1003 (N.D.Ala.1989), another judge of this court held that the debtor in a Chapter 13 proceeding was not entitled under the applicable law to cure a default that occurred after the bankruptcy court had confirmed the Chapter 13 plan. Bowest argues that Judge Wright's decision was "in direct opposition to this binding precedent," suggesting that the *Hollis* decision constitutes the law of this district and that the bankruptcy and district judges of this court are bound to follow it. Such is not the case. The court holds the utmost respect for all the judges of the court and is always pleased to have the benefit of their opinions. Respectfully, however, the court must suggest that *Hollis* does not constitute precedent binding on this court. *Colby v. J.C. Penney*, 811 F.2d 1119, 1124 (7th Cir.1987); *Jackson v. Johns*, 714 F.Supp. 1126, 1130 (D.C.Colo.1989); *King v. County of Nassau*, 581 F.Supp. 493, 503 (E.D.N.Y.1984); *E.E.O.C. v. Pan American World Airways*, 576 F.Supp. 1530, 1535 (S.D.N.Y. 1984). To the extent, however, that *Hollis* is both applicable and persuasive, the court will be pleased to consider it.

A debtor's plan under Chapter 13 of the Bankruptcy Code must (1) allocate a sufficient portion of future income to provide for execution of the plan, (2) provide for payment in full in deferred cash payments of all claims entitled to priority under 11 U.S.C. § 507, and (3) treat all claims within the same class equally. 11 U.S.C.

§ 1322(a). Additionally, subject to the requirements of 11 U.S.C. § 1322(a), the plan may,

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; (3) provide for the curing or waiving of any default; [and]
>
> \* \* \* \* \* \*
>
> (5) *notwithstanding paragraph (2)* of this subsection, *provide for the curing of any default within a reasonable time* and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b)(2) and (5). (Emphasis added.) The bankruptcy court must confirm the plan provided the conditions of 11 U.S.C. § 1325 are met.

■ Under 11 U.S.C. § 1323(a), the debtor may modify a Chapter 13 plan at any time before it is confirmed, provided the plan, as modified, conforms to the requirements of 11 U.S.C. § 1322. Once confirmed, the modified plan becomes the Chapter 13 plan. As noted in Judge Wright's opinion, the Staffords' plan was not modified before confirmation pursuant to section 1323(a). Rather, it was modified after confirmation pursuant to the provisions of 11 U.S.C. § 1329.[2]

The case has been treated to this point as though it presents a single question re-

---

**2.** In pertinent part, that section provides:

**§ 1329. Modification of plan after confirmation**

(a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

\* \* \* \* \* \*

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title [11 U.S.C. §§ 1322(a), (b), and 1323(c)] and the requirements of section 1325(a) of this title [11 U.S.C. § 1325(a)] apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

garding the authority of the bankruptcy court to approve a modified Chapter 13 plan that cures the debtors' defaults occurring after the petition was filed. No consideration has been given to what concerns, if any, are implicated by the fact that the debtors were permitted to cure defaults that occurred after the petition was filed and both before and after the original confirmation order.[3] Since modifications to Chapter 13 plans before the initial confirmation are authorized under 11 U.S.C. § 1323 and a modification after initial confirmation is controlled by 11 U.S.C. § 1129, the two categories of defaults would ordinarily be treated separately under the two sections. Though the parties have not argued for separate treatment, the court will do so because section 1323 provides some guidance in considering the meaning of section 1329.

The interpretation of any statute must begin with its text. If the text leaves no room for doubt as to its meaning, the court must go no farther. The United States Supreme Court has recently said,

> When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances. *Burlington Northern R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461 [107 S.Ct. 1855, 1859, 95 L.Ed.2d 404] (1987); *Rubin v. United States*, 449 U.S. 424, 430 [101 S.Ct. 698, 701, 66 L.Ed.2d 633] (1981); *TVA v. Hill*, 437 U.S. 153, 187 [98 S.Ct. 2279, 2298, 57 L.Ed.2d 117] (1978). We do not believe that this is one of those rare cases where the application of the statute as written will produce a result "demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 [102 S.Ct. 3245, 3250, 73 L.Ed.2d 973] (1982).

*Demarest v. Manspeaker*, —— U.S. ——, ——, 111 S.Ct. 599, 604, 112 L.Ed.2d 608

(1991). "In the absence of a 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must ordinarily be regarded as conclusive.'" *United States v. James*, 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). "Where the language of a statute is not ambiguous and does not lead to absurd results, the job of the courts is to apply it as written." *Arline v. School Bd. of Nassau County*, 772 F.2d 759, 762 (11th Cir.1985); *aff'd*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987).

Applying those principles, section 1323 does not present one of those "rare and exceptional circumstances" when the court may seek meaning outside the text of the statute itself. Rather than being unclear or equivocal, the general intent of the Congress and the language of section 1323 are straightforward and undeniable. Under that section the debtors had the clear and unequivocal right to modify their Chapter 13 plan at any time before the bankruptcy court made its order of confirmation.

Chapter 13 of the Bankruptcy Act was enacted to "provide[ ] a highly desirable method for dealing with the financial difficulties of individuals. It creates an equitable and feasible way for the honest and conscientious debtor to pay off his debts rather than having them discharged in bankruptcy." H.Rep. No. 193, 86th Cong., 1st Sess. 2 (1959), *quoted in Perry v. Commerce Loan Co.*, 383 U.S. 392, 396, 86 S.Ct. 852, 855, 15 L.Ed.2d 827 (1966). "[B]ankruptcy relief should be effective, and should provide the debtor with a fresh start." H.Rep. No. 595, 95th Cong., 2d Sess. 118, reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 6079. That expression of congressional intent is entirely consistent with the plain language of section

---

**3.** The petition and initial plan were filed on January 30, 1990 and listed an arrearage on the Bowest mortgage of $2,670.00 representing unpaid monthly amounts from September 1989 to January 1990. The modified plan that was approved on April 24, 1990 brought into the plan arrearages representing monthly payments and late charges for February, March and April 1990. Thus, arrearages for February and March were clearly post-petition and pre-confirmation. It is unclear from the record whether the April 1990 payment became delinquent before or after confirmation of the original plan.

1323(a). Where there is no statutory language or expression from the Congress to indicate that section 1322(b)(5) does not mean what it says, this court is bound to read the law and apply it as it appears. The court does not doubt that Mr. and Mrs. Stafford could have modified their Chapter 13 plan prior to the original confirmation as a matter of right, the only condition being that the modified plan comply with the requirements of 11 U.S.C. § 1322. The "plan as modified" then would have become the Chapter 13 plan. Since the plan may provide for the "curing of *any default within a reasonable time,*" 11 U.S.C. § 1322(b)(5), the debtors could have cured the defaults that occurred prior to April 3, 1990, i.e., the February and March mortgage payments. *In the Matter of Canipe,* 6 C.B.C.2d 764 (Bankr.W.D.N.C.1982).

A decision that Mr. and Mrs. Stafford had the right to and could have modified their initial Chapter 13 plan before it was confirmed does not end the inquiry, first because the debtors did not so modify their Chapter 13 plan and second, because the arrearage was based, at least in part, on a default that occurred after the confirmation, the April 1990 mortgage payment.

■ Postconfirmation modifications made under the authority of section 1329, like changes made under section 1323(a), may work significant changes in the original plan and, like the section 1123(a) changes, the plan as modified under section 1129 becomes the Chapter 13 plan. The modified plan is subject to the provisions of sections 1322(a), 1322(b), and 1323(c). As was said above, section 1322(b)(5) provides that *any default* may be cured *within a reasonable time.* Having found that a preconfirmation modification would have authorized a curing of postpetition/preconfirmation defaults under section 1323(a), the court can perceive of no reason why modifications under section 1329 occurring after confirmation should be treated differently. Both sections 1323 and 1329 provide that modified plans are subject to the provisions of section 1322. No party has suggested any reason why the language of section 1323(b)(5) should mean one thing

when applied to preconfirmation modifications under section 1323(a) and something entirely different when applied to postconfirmation modifications under section 1329. The plain language of the statutes, when taken together with the clearly stated congressional intent to provide qualified debtors with a "new start", would seem to end the matter.

Despite what seems to be a clear direction from the Congress, not all courts agree that a Chapter 13 debtor may be allowed to cure defaults that occur after the Chapter 13 Petition is filed. This court respectfully disagrees with those who read the statutory provisions to prohibit what has been done here. In the most widely accepted treatise on bankruptcy law, the authors thought so little of the question propounded by the appellant that they hardly acknowledged it. "Although section 1323(b)(5) is not limited to secured or residential loans, its most common use by far is to cure defaults on residential mortgages. It may be utilized to cure postpetition defaults as well as prepetition defaults." 5 *Collier on Bankruptcy,* ¶ 1322.09[1], at 1322–19 (15th Ed.1990).

In reaching the decision in *Hollis,* the court relied on decisions from bankruptcy courts in Colorado and Georgia that had held that postpetition defaults may not be cured by modifications to Chapter 13 plans. In *In re Nicholson,* 70 B.R. 398 (Bankr.D. Co.1987), the court read section 1322(b)(5) in conjunction with section 1322(b)(2) to say "a Chapter 13 plan may not modify the rights of a creditor holding a claim secured only by a mortgage on the debtor's principal residence except to cure prepetition defaults within a reasonable time." 70 B.R. at 401. The holding ignores the clear language of section 1322(b)(5) that "[n]otwithstanding paragraph (2)" the debtor may cure "any default within a reasonable time." In other words, a debtor may "modify the rights of a creditor holding a claim secured only by a mortgage on the debtor's principal residence" provided it is done to cure "any default within a reasonable time." Further, there is some indication that the Colorado bankruptcy judge intend-

ed to limit his decision to the facts of the case before him.

> [T]o allow the Debtor to provide adequate protection ... [by making periodic deferred payments on post-petition (sic) defaults] ... would clearly modify the rights of the creditor contrary [to law]. To accede to the Debtor's argument would place the secured creditor in the position of being potentially subjected to repeated post-petition defaults during the term of the plan, and perhaps being met with the argument that no post-petition (sic) payments need be made during the pendency of a plan if the creditor is adequately protected by an equity cushion in the property. The statute simply does not countenance such a result *in this case.*

*In re Nicholson,* 70 B.R. at 401. (Emphasis supplied.)

In the other case relied upon by the *Hollis* court, *In re Cotton,* 102 B.R. 891 (Bankr.N.D.Ga.1989), the court refused to permit a postconfirmation modification to a Chapter 13 plan to include the debtor's obligation for an arrearage on a home mortgage where the mortgage obligation itself was undertaken almost one year after the Chapter 13 plan was confirmed and without permission of the standing trustee. The bankruptcy judge read section 1323(a) in conjunction with section 1305 to preclude the debtor from adding new debts after the confirmation of the Chapter 13 plan except as permitted by section 1305.[4] *Cotton* is not applicable to the questions presented on this appeal.

The better reasoned cases have held, contrary to the argument advanced by the appellant, that a Chapter 13 debtor may cure "any default within a reasonable time" including those occurring after the petition was filed and after confirmation of the original Chapter 13 plan. See, *In re Gadlen,* 110 B.R. 341 (Bankr.W.D.Tenn. 1990); *In re Davis,* 110 B.R. 834 (Bankr.W. D.Tenn.1989); *In re Lynch,* 109 B.R. 792 (Bankr.W.D.Tenn.1989); *In re Ford,* 84 B.R. 40 (Bankr.E.D.Pa.1988) and *In re McCollum,* 76 B.R. 797 (Bankr.D.Or.1987). To those who say that to permit modifications to bring postpetition defaults into the Chapter 13 plan will unfairly disadvantage creditors, the court notes the ample authority of the bankruptcy court to deal with unworkable plans or with those who would abuse the system. Chapter 13 plans and, *a fortiori,* modified plans may be confirmed only if they have been "proposed in good faith and not by any means forbidden by law." Section 1325(a)(3). *See, In re Hilton,* 122 B.R. 138 (Bankr.M.D.Fla.1990). The court may relieve creditors from the automatic stay provisions of 11 U.S.C. § 362 if it finds that a petition was filed in bad faith. *In re Natural Land Corp.,* 825 F.2d 296 (11th Cir.1987). Defaults must be cured within a "reasonable time." Section 1322(b)(5). Plans must ordinarily provide for payment over a period of not more than three years, though they may be extended to five years with approval of the court. Sections 1322(c) and 1329(c). The court may revoke an order of confirmation if that order was procured by fraud. Section 1330(a). Finally, the court has broad equitable powers to carry out the provisions of the Bankruptcy Act. 11 U.S.C. § 105(a). Surely, the court has the power to meet objections such as those voiced by the *Hollis* court, 105 B.R. at 1007.

There remains the question whether Bowest is entitled to relief from the automatic stay provisions of 11 U.S.C. § 362(a). The bankruptcy court shall grant relief from the stay (1) for cause, including a lack of adequate protection of Bowest's interest in the property, or (2) if the Staffords have no equity in residence and it is not necessary to carry out their Chapter 13 plan. 11 U.S.C. § 362(d)(1) and (2). The party seeking relief from the stay carries the burden concerning the debtor's equity in the subject property. On all other issues, the party opposing relief from the stay carries the burden. 11 U.S.C. § 362(g)(1) and (2).

---

**4.** In pertinent part, that section provides for the permissive filing of postconfirmation claims by a creditor for a consumer debt "that is for property or services necessary for the debtor's performance under the plan."

 A decision to lift a stay or, presumably, to refuse to do so is discretionary with the bankruptcy judge. It may be reversed only for an abuse of discretion. *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1026 (11th Cir.1989); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 814 F.2d 844 (1st Cir.1987); *In re Holtkamp*, 669 F.2d 505 (7th Cir.1982).

This court proceeds on the assumption that the bankruptcy court has broad discretion to decide whether or not there is "cause" for relief from the automatic stay, and whether or not the secured creditor has "adequate protection," this is, where the pertinent facts are disputed or can lead to different conclusions.

*In re Hollis*, 105 B.R. at 1005. What the court must decide then is whether the bankruptcy court abused its discretion in refusing to relieve Bowest of the constraints imposed upon it because of the stay and to permit it to go forward in protecting its rights as a creditor. The court concludes that the bankruptcy court did not abuse its discretion and that it should be affirmed.

In denying relief from the stay, the bankruptcy court said,

It might be noted that the Staffords' Chapter 13 plan was confirmed at 100 percent repayment for both secured and unsecured creditors. The security interest at issue here is in the family home which houses this couple and their three children. Consequently, the risk of loss of the property or other failure to be able to locate the Debtors is extremely low.

Bowest Corporation is included in the Stafford Chapter 13 plan for the full amount of its $428.00 regular monthly payment, a $75.00–per–month payment on pre-petition (sic) arrearage and a $50.00–per–month payment on the postpetition (sic) arrearage. Thus Bowest Corporation must be regarded as adequately protected by the security it holds in the Debtors' residence and the payments ordered by this court. Furthermore, the Court has entered an order routing the full payment toward the Debtor's (sic) plan to the Chapter 13 Trustee by payroll deduction.

Consequently, the Court may not grant Bowest Corporation relief from stay based on Section 362(d) since it *offered no evidence in support of its motion.* As the court reads the statute, the bankruptcy judge would have been required to grant the motion for relief from the stay if either of the two conditions of section 362(d)(1) or (2) had prevailed. Bowest does not contend here that the debtors had no equity in their home or that it is not necessary to carry out the Chapter 13 plan. Rather, it argues its interest in the residence is not adequately protected under the terms of the modified Chapter 13 plan. In similar circumstances, the courts have refused to lift a stay on the ground that the debtor should be allowed to retain property under a Chapter 13 plan that called for payment of mortgage arrearages in full. *In re Breuer*, 4 B.R. 499, 1 C.B.C.2d 722 (Bankr.S.D.N.Y.1980); *In re Taddeo*, 9 B.R. 299, 4 C.B.C.2d 185 (Bankr.E.D.N.Y. 1981), *aff'd sub nom. DiPierro v. Taddeo*, 15 B.R. 273, 5 C.B.C.2d 1309 (E.D.N.Y. 1981), 685 F.2d 24, 6 C.B.C.2d 1201 (2d Cir.1982).

Here, the debtors have equity in their home and the Chapter 13 plan calls for payment of all arrearages on the mortgage in full. The bankruptcy court has ordered that arrearage payments and current mortgage payments be accomplished through payroll deductions and the standing Chapter 13 trustee. Under these circumstances, the court cannot say that the bankruptcy judge abused his discretion in refusing to lift the automatic stay of 11 U.S.C. § 362. The court, of course, is not unmindful that the appellant's position vis-a-vis relief from the stay may change if the Staffords fail to make payments under the plan in a timely and consistent fashion.

In accord with the opinions stated herein, the orders of the bankruptcy court which confirmed the Chapter 13 plan as modified and refused to grant relief from the automatic stay will be affirmed.