**In re Debbie Marie BELLINGER, a/k/a Debbie Lee, Debtor.**

**Bankruptcy No. 94–01250.**

United States Bankruptcy Court, D. Idaho.

Jan. 31, 1995.

Milan E. Miller, Lewiston, ID, for debtor.

Lance D. Churchill, Boise, ID, for Lomas Mortgage U.S.A.

L.C. Spurgeon, Trustee.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

The debtor has moved to modify her confirmed Chapter 13 Plan. Lomas Mortgage has moved for relief from the section 362 automatic stay. The motions raise the issue of modification of a chapter 13 plan to include payment of arrearages in the original plan payments.

### BACKGROUND

Debbie Bellinger (the "debtor") filed a petition for relief under Chapter 13 of Title 11 of the United States Code on May 19, 1994. An order was entered confirming her Chapter 13 Plan on August 22, 1994. The plan provides for 36 equal payments of $433.33 per month plus all of the debtors' income tax returns due during the term of the plan. The monthly payments were to be made by automatic deduction from the debtors' paychecks.

With regard to Lomas Mortgage ("Lomas"), the plan provides that the debtor's mortgage arrearage will be paid through the plan. However, the plan provides for payment outside of the plan, that is, directly to Lomas, by-passing the trustee, of the month-

ly payments due post-petition on the note and deed of trust held by Lomas and secured by the debtor's principal residence.

The debtor is currently delinquent on thirteen payments to Lomas, seven pre-petition payments and six post-petition payments, for a total arrearage of $4,855.25. Lomas requests relief from stay on the grounds the debtor has no equity in the property, is not making adequate protection payments, and for cause, since a post-petition arrearage in monthly payments exists.

The debtor seeks to amend the plan to include the payments to Lomas in the amount of $387 per month to be made by automatic withdrawal. In addition, the debtor seeks to add the post-petition arrearage to the amounts remaining due and to be paid in the remaining monthly payments under the plan.

## DISCUSSION

### A. Relief From the Automatic Stay

■ Lomas contends it should be granted relief from the section 362 automatic stay because the debtor has no equity in the property and the property is not necessary to an effective reorganization.[1] However, the debtor's schedules indicate the property has a fair market value of $60,000.00. Lomas has not presented any evidence to the contrary. Lomas contends the amount due under the mortgage including the arrearage is $40,207.47. Thus the debtor has just short of $20,000.00 in equity in the property. As Lomas has failed to show the debtor has no equity in the property, Lomas's motion for relief from the section 362 automatic stay will be denied.

1. Code section 362(d) provides:
   On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

   \* \* \* \* \* \*

   (2) with respect to a stay of an act against property under subsection (a) of this section, if—

### B. Confirmation of Amended Chapter 13 Plan

Lomas contends the debtor's proposed amendment is not feasible and violates the protection granted to mortgage holders by section 1322(b)(2). In addition Lomas contends the plan modification is not proposed in good faith.

#### 1. Feasibility

■ Lomas asserts that because the debtor has been unable to make her mortgage payments when the payments were outside of the plan she will be unable to make them under the proposed modification to the plan. The debtor is paid every two weeks. The debtor candidly admits that although she has the income to make the payments she is psychologically incapable of saving her money from her first bi-monthly check to meet her obligations later in the month. For this reason she agreed to have payments under her Chapter 13 plan automatically withheld from her income. Her proposed modification provides the mortgage payments would also automatically be withheld from her income.

The debtor has sufficient disposable income to make the payments proposed under the plan. Provided the debtor is restrained from spending her disposable income on other things there is no reason why the plan cannot be successfully carried out. The plan is feasible.

#### 2. 1322(b)(2) and (b)(5)

In the alternative, Lomas contends a debtor may not modify a confirmed Chapter 13 plan to include post-petition arrearage on a mortgage secured by the debtors' principal residence.

   (A) the debtor does not have an equity in such property; and
   (B) such property is not necessary to an effective reorganization.
   11 U.S.C. § 362(d)(2).

The relevant Code sections are section 1329[2] which provides for post-confirmation modifications of Chapter 13 plans and subsections (b)(2) and (b)(3) of section 1322 which limit a Chapter 13 debtor's ability to modify the terms of a debt secured by his principal residence. Subsections 1322(b)(2) and (5) provide:

(b) Subject to subsections (a) and (c) of this section, the plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ...

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b).

■ Pursuant to section 1322(b)(5) a debtor may decelerate a loan secured by a principal residence by curing the default over a reasonable period through a chapter 13 plan. *In re Packer*, 91 I.B.C.R. 35, 36 (Bankr.Idaho 1991), *citing In re King*, 23 B.R. 779 (9th Cir. BAP 1982). Contrary to Lomas' contentions, section 1322(b)(5) can be used to cure both pre-petition and post-petition arrearage. *Green Tree Acceptance, Inc.*

*v. Hoggle (In re Hoggle)*, 12 F.3d 1008, 1010–1012 (11th Cir.1994); *In re Comans*, 164 B.R. 539, 541 (Bankr.S.D.Miss.1994) (The majority of courts have held section 1322(b)(5) allows debtors to cure both pre-petition and post-petition arrearage); *Lomas Mortg. U.S.A. v. Roberts*, 137 B.R. 343, 345 (D.Alaska 1992) ("It is clear that a plan may provide for such curing of post-petition arrearage") *reversed on other grounds* 5 F.3d 537 (9th Cir.1993); 5 *Collier on Bankruptcy*, ¶ 1322.09[1], at 1322–19 (15th Ed.1990); *see also, cases cited in footnote 4 infra. Cf. In re Huerta*, 137 B.R. 356, 371–373 (Bankr.C.D.Cal.1992) (Holding that 1322(b)(5) can only be used to cure pre-petition arrearage).[3]

■ The question remains, however, whether subsection 1322(b)(2) and 1322(b)(5) permit payment of post-confirmation arrearage through a modified Chapter 13 plan.

In, *In re Hoggle*, the Court of Appeals for the Eleventh Circuit concluded the plain meaning of subsections 1322(b)(2) and (b)(5) as well as the legislative history support the conclusion that 1322(b)(5) permits a debtor to include post-confirmation arrearage in a modified Chapter 13 plan:

Section 1322(b)(2) authorizes debtors to modify the rights of secured claim holders, but it provides protection for home mortgage lenders by creating a specific "no modification" exception for holders of claims secured only by a lien on the debtor's principal residence. However, notwithstanding § 1322(b)(2)'s prohibition against modifications of the rights of home mortgage lenders, § 1322(b)(5) expressly authorizes plans to provide for the timely curing of any default and maintenance of

**2.** Code sections 1329(a) and (b) provide in relevant part:

(a) At any time after confirmation of the plan but before the competition of payments under such plan, the plan may be modified, upon request of the debtor, ... to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account

of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

\* \* \* \* \* \*

11 U.S.C. §§ 1329(a) and (b).

**3.** *See also In re Southtrust Mobile Services, Inc. v. Englebert*, 137 B.R. 975, 985–86 (N.D.Ala.1992) *overruled by In re Hoggle*, 12 F.3d 1008 (11th Cir.1994); *Southeast Bank v. Hollis (In re Hollis)*, 105 B.R. 1003, 1005–07 (N.D.Ala.1989), *overruled by In re Hoggle, supra; In re Nicholson*, 70 B.R. 398, 401 (Bankr.D.Colo.1987).

payments during the life of the plan. Section 1322(b)(5) clearly states that a plan may provide for the curing of *any* default. Congress could have easily inserted the word prepetition to modify default but failed to do so. The omission is significant. The plain meaning of § 1322(b)(5) permits cure of any default whether occurring prior to the filing of the petition or subsequent to confirmation of the plan. [footnote omitted]. Thus, § 1322(b)(5) would permit cure of postconfirmation defaults.

Moreover, we believe that this result is consistent with legislative intent. Chapter 13's overall policy is to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 118 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 141 (1978) U.S.Code Cong. & Admin.News 1978, p. 5787.

\* \* \* \* \* \*

Legislative history accompanying § 1322(b)(5) specifies that a plan may "provide for the curing [of] any default" on long-term debt, such as mortgage debt. H.R.Rep. No. 95–595. 95th Cong., 1st Sess. 429 (1977). The Senate Report likewise states that under § 1322(b)(5), a Chapter 13 plan may cure "any default." S.Rep. No. 95–989, 95th Cong., 2d Sess. 141 (1978)....

\* \* \* \* \* \*

Thus, the general legislative intent surrounding Chapter 13 as well as specific legislative history relating to § 1322(b)(5) and § 1329 suggest that defaults, either preconfirmation or postconfirmation, may be cured under appropriate circumstances. *In re Hoggle*, 12 F.3d at 1010–11.

The majority of the other courts considering the issue have held section 1329(a) and 1322(b)(2) and (5) permit modification of a chapter 13 plan to include postconfirmation arrearage.[4] These decisions have been codified by the Bankruptcy Reform Act of 1994. Pursuant to section 301 of the Act section 1322 has been amended to provide:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> > (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.

11 U.S.C. § 1322(c)(1) (West 1995).[5]

Although the above new subsection is not applicable to the present case, as the Act does not apply to cases filed before October 22, 1994, the new section is illustrative of Congress's intention to provide homeowners with continuing rights to cure defaults.

Nevertheless, a few courts have held to the contrary.[6] In *In re Nicholson*, the debtor's

---

**4.** *See also Bowest Corp. v. Stafford (In re Stafford)*, 123 B.R. 415, 421 (N.D.Ala.1991); *In re Bereolos*, 126 B.R. 313, 327–32 (N.D.Ind.1990); *Far West Federal Bank v. Vanasen (In re Vanasen)*, 81 B.R. 59, 62 (D.Or.1987); *Central Bank of the South v. Thomas (In re Thomas)*, 121 B.R. 94, 102–07 (Bankr.N.D.Ala.1990); *In re Gadlen*, 110 B.R. 341, 343–45 (Bankr.W.D.Tenn.1990); *In re Davis*, 110 B.R. 834 (Bankr.W.D.Tenn.1989); and *In re McCollum*, 76 B.R. 797, 799–800 (Bankr.D.Or.1987).

**5.** With regard to the curing of defaults the Act further amends 11 U.S.C. § 1322(c) to provide:

"(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

\* \* \* \* \* \*

(2) in a case in which the last payment of the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title."

\* \* \* \* \* \*

"(e) Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."

11 U.S.C. § 1322(c).

**6.** *See In re Southtrust Mobile Services, Inc. v. Englebert*, 137 B.R. 975, 985–86 (N.D.Ala.1992) *overruled by In re Hoggle, supra; In re Hollis, supra; In re Sensabaugh*, 88 B.R. 95 (Bankr. E.D.Va.1988); *In re Nicholson, supra.*

plan included payment over a 24 month period of pre-petition arrearage mortgage secured by his principal residence. The plan provided for current payments to the mortgage company to be made outside the plan. The debtor then defaulted on several post-confirmation payments to the mortgagee and the mortgagee initiated foreclosure proceedings without first obtaining relief from the section 362 automatic stay. The court found the post-confirmation defaults created a new claim not subject to the automatic stay. *In re Nicholson,* 70 B.R. at 400–01. The court added:

> The propriety of this view in this case is further buttressed by the express provisions of Chapter 13. Pursuant to the provisions of 11 U.S.C. § 1322(b)(2) and (5) a Chapter 13 plan may not modify the rights of a creditor holding a claim secured only by a mortgage on the debtor's principal residence except to cure pre-petition defaults within a reasonable time.... [T]o accede to the Debtor's argument would place the secured creditor in the position of being potentially subjected to repeated post-petition defaults during the term of the plan, each to be cured by deferred payments, and perhaps being met with the argument that no post-petition payments need be made during the pendency of a plan if the creditor is adequately protected by an equity cushion in the property. The statute simply does not countenance such a result in this case.

*In re Nicholson,* 70 B.R. at 401. *See also In re Hollis,* 105 B.R. at 1005–06 (citing *In re Nicholson* for the conclusion that 1322(b)(5) does not allow the curing of either post-petition or post-confirmation arrearage). Although the *Nicholson* court states that section 1322(b)(2) and (5) *expressly* provide that the only prepetition mortgages may be cured, neither section distinguishes expressly, or otherwise between pre and post-petition arrearage. Both *In re Nicholson* and *In re Hollis* are based the minority theory that confirmation of a Chapter 13 plan revested the property in the debtor and creates a new mortgage free from any preclusive effect of the section 362 automatic stay. The rule in the Ninth Circuit is that the section 362 automatic stay applies to post-confirmation collection activities concerning mortgages existing prior to the filing of the petition. *In re Ellis,* 60 B.R. 432 (9th Cir. BAP 1985).

Nor is the specter of multiple post-confirmation defaults sufficient grounds for prohibiting the use of a Chapter 13 plan to cure post-confirmation defaults. Bankruptcy courts have ample means to prevent such abuses of the system. Section 1322(b)(5) itself requires that defaults be cured "within a reasonable time." More important section 1329 incorporates the requirement of section 1325(a) that "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). In addition, unless the debtor had substantial equity in the property, section 362(d) would eventually allow the creditor to obtain relief from stay in the unlikely event a court permitted the debtor to continuously modify the plan to include ever increasing post-petition arrearage.

Thus, the reasoning of those courts finding a chapter 13 plan may be modified to include post-confirmation arrearage if the time for the curing is not unreasonable and the modification is otherwise made in good faith is correct.

### 3. Good Faith

Lomas also contends the debtor has not filed her amendment in good faith. "Bankruptcy courts must 'determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each Chapter 13 plan.'" *Washington Student Loan Guaranty Association v. Porter (In re Porter),* 102 B.R. 773, 775 (9th Cir. BAP 1989), *quoting In re Goeb,* 675 F.2d 1386, 1390 (9th Cir.1982). In determining whether a particular plan is filed in good faith, "[t]he bankruptcy court must consider the totality of the circumstances, including prepetition conduct." *550 West Ina Road Trust v. Tucker (In re Tucker),* 989 F.2d 328, 330 (9th Cir.1993). In *In re Goeb,* the Court of Appeals for the Ninth Circuit listed several factors as indications of bad faith. These include: whether the debtor has misrepresented the facts in his plan; whether the plan is proposed in an inequitable manner;

whether the debtor is attempting to unfairly manipulate the Bankruptcy Code; and whether the debtor acted in an equitable manner in proposing his plan. *In re Goeb,* 675 F.2d at 1390. *See also In re Warren,* 89 B.R. 87 (9th Cir. BAP 1988).

The debtor's failure to make post-petition mortgage payments is admittedly due to her lack of fiscal restraint rather than any financial hardship. However, debtor's proposed amendment is an honest attempt to control her own spending by making all future payments to Lomas via payroll deduction. Under these circumstances the Court finds the debtor is sincere in her motivation to repay creditors. The debtor proposes payment of all of her disposable income toward the plan. With the exception of the repayment of her mortgage arrearage, the debtor has not attempted to modify the mortgage. Accordingly, the debtor's amended plan is filed in good faith.

4. Inclusion of Payments Previously Outside of the Plan

The confirmed Chapter 13 plan provides the debtor will make payments to Lomas outside the plan. *See* Debtor's Chapter 13 Plan ¶ 3. Lomas thus contends the debtor may not amend the plan to include payment of the mortgage because the debt was never part of the plan. Section 1329(a) only allows amendments to the plan of claims and classes provided for by the plan. Lomas contends the debtor may not amend the plan to include payment of the mortgage because this was never part of the plan. However, although payments are to be made outside the plan, the post-petition mortgage payments are provided for by the plan, i.e. the plan provides they will be made outside the plan. Therefore, the plan may not be amended to include them. Therefore, the current mortgage payments may be included in the modified plan.

### CONCLUSION

The debtor's motion to modify her confirmed Chapter 13 plan will be granted. Lo-

mas' motion for relief from the section 362 automatic stay will be denied.

A separate order will be entered.